**In re Crystal G. FRANK, Debtor.**

**Crystal G. Frank, Plaintiff,**

**v.**

**Gulf States Finance Company, Defendant.**

**Bankruptcy No. 99–35130–H2–13. Adversary No. 99–3710.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Sept. 8, 2000.

---

**15.** 203 B.R. 958 (N.D.Ill.1997).

**16.** Lundin, *supra*, § 6.28.

Johnie J. Patterson, High Point, NC, for Debtor.

William T. Green III, Houston, TX, for Gulf States.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

WESLEY W. STEEN, Bankruptcy Judge.

In this adversary proceeding, Crystal Frank, (the "Debtor"), seeks a judgment for damages (including punitive damages) from Gulf States Finance Company ("Gulf States") for alleged wrongful repossession and sale of her automobile subsequent to dismissal of the bankruptcy case but prior to reinstatement of the case. After trial on the merits, the Court concludes that the repossession and the sale do not violate § 362 of the Bankruptcy Code because the dismissal of a bankruptcy case is effective immediately and terminates the automatic stay upon entry of the order by the clerk. However, Gulf States' action violates state law and constitutes a breach of contract. Therefore, an award of damages is appropriate. However, the court

declines to award punitive damages because the Debtor is chargeable with substantial misconduct and because the Court is not convinced that the Debtor has made a reasonable effort to mitigate damages.

## JURISDICTION

This is an adversary proceeding, a civil proceeding, arising in a case under title 11 and arising under title 11 of the United States Code. The United States District Court has jurisdiction under 28 U.S.C. § 1334(b). By Order dated August 9, 1984, under authority granted by 28 U.S.C. § 157(a), the United States District Court for the Southern District of Texas referred all such proceedings to the bankruptcy judges for the district. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(C), (G), and (O). The bankruptcy judge may hear and may determine core proceedings, 28 U.S.C. 157(b)(1). Neither party contests jurisdiction over the subject matter and both consent to entry of a final order by the bankruptcy judge.[1]

## FACTS [2]

On March, 17.1999,[3] the Debtor purchased a 1994 Mitsubishi Galant from Charlie Thomas Ford for $7,148.08 (cash price, not including finance charges). The Debtor made a $2,000 down payment and the balance of the purchase price was financed by Gulf States. The Debtor signed a Motor Vehicle Retail Installment Contract[4] which granted Gulf States a security interest in the vehicle, including the usual rights to repossess and to sell the vehicle according to Texas law if the Debtor failed to fulfill her obligations under the contract. The contract required Gulf States to give the Debtor notice of the time and place of a public sale.[5]

About two months later, on May 26, the Debtor filed her chapter 13 petition that initiated this case. When the case was filed, the Court entered a routine Initial Order[6] that required the Debtor, among other things, to file all *delinquent* tax returns not later than July 26,[7] with a copy of each delinquent return to be provided to IRS Special Procedures (at an address specified in the order) to facilitate quick determination of priority tax claims to be paid under the plan. The order also required the Debtor to provide the chapter 13 trustee with copies of all tax returns filed while the case was pending.

On September 17, 1999, the chapter 13 trustee filed a motion to dismiss the Debtor's bankruptcy case alleging, among other

---

**1.** Joint Pretrial Statement paragraph 2.

**2.** The findings of fact include judicial notice of the prior hearings and pleadings in this case.

**3.** All dates below, unless otherwise indicated, are in calendar year 1999. Therefore the year will not be repeated.

**4.** Gulf States Exhibit 1.

**5.** See Gulf States Exhibit 1 and the Admissions of Fact in the Joint Pretrial Statement. Hereafter, the Admissions of Fact in the Joint Pretrial Statement will be referred to as "Stipulated Fact ___". The Motor Vehicle Retail Installment Contract states, in enumerating the repossession rights: "In the event of repossession of the described vehicle, Seller (Holder) will give Buyer reasonable notice of the time and place of any public sale thereof or of the date after which any private sale

may be held or any other intended disposition thereof is to be made."

**6.** Docket # 4. The Initial Order states: "One of the most frequent problems (resulting in delays, additional expense and waste of judicial resources) in chapter 13 cases is the failure to file tax returns timely." The order then goes on (i) to require the filing of *delinquent* returns within 60 days (with a copy to be provided to IRS Special Procedures—at an address specified in the order—to facilitate determination of delinquent taxes), and (ii) to require that the Debtor file all post-bankruptcy returns timely at the usual address for filing such returns. A copy of the Initial Order was handed to the person filing the bankruptcy petition, a copy was mailed to Debtor's counsel, and a copy was mailed to the Debtor. *See* Docket # 4.

**7.** *I.e.* within 60 days after the bankruptcy case was filed.

things, that the Debtor had not filed her 1998 income tax return and therefore the trustee could not determine whether the plan met the statutory requirement to provide for payment of all priority tax claims. The Debtor's response, filed September 20, admitted the trustee's allegations.[8]

On October 26, the Court conducted a "chapter 13 panel" at which numerous chapter 13 cases were called for hearing on confirmation, dismissal, *etc.* According to the minute entry from that date, the chapter 13 trustee reported that the Debtor had still not filed her 1998 return. The case was dismissed by order signed on that date and entered on October 29.

Ten days later, November 8, Gulf States repossessed the vehicle.[9]

The next day, November 9, the Debtor filed an emergency motion to reconsider the dismissal and to reinstate the case. The Debtor asserted that the Court should reconsider the dismissal and should reinstate the case because the Debtor had finally filed her 1998 tax return, but had (by mistake) not complied with the Initial Order requirement to send a copy of the delinquent return to the chapter 13 trustee or to the IRS Special Procedures division. It is not clear *when* the Debtor filed the 1998 return. Presumably it was filed some time between September 20 and November 9.[10]

On November 10, Debtor's counsel personally notified Gulf States' counsel that a motion to reinstate had been filed.[11] On November 17 Gulf States' counsel was notified that the Court had set an emergency hearing on the motion. The hearing was set for November 23.[12] Neither in these telephone conversations nor by any other means did Gulf States inform Debtor's counsel of the intended imminent sale of the vehicle or of the time or place of the sale.[13]

Gulf States *did* deposit into the U.S. Mails a written notice of repossession and right of redemption but, as more fully set forth below, the Court concludes that the notice is insufficient to satisfy statutory and contractual requirements. Whether or not the language of the notice was sufficient. Debtor testified that she never received it. Debtor's testimony is corroborated by other evidence, as discussed more fully below, and the Court finds that the Debtor never received the notice because it was not properly addressed.

On November 18, Gulf States sold the vehicle at auction for $1,854.75.[14]

Gulf States did not file any response to the Debtor's motion to reinstate the case and Gulf States did not appear at the hearing to oppose reinstatement or to seek any limitation on the relief sought by the Debtor. In particular, but without limitation, the Court finds that Gulf States was aware of the emergency hearing on reinstatement and that Gulf States did not ask the Court to deny the relief or to limit the relief to avoid prejudice to Gulf States' actions during the period that the dismissal was in effect. It was clear from the tone of Gulf States' presentation at trial that Gulf States rests entirely on its legal analysis (i) that it had no duty to give actual notice of repossession and sale to the Debtor, and (ii) that vacating the order of dismissal would have no effect on trans-

---

**8.** Docket # 11. The Debtor had earlier (August 27, 1999) filed an affidavit—docket # 8— stating that she was not required to file tax returns for 1996 or 1997. The Debtor did not deny that she was required to file a return for 1998 and did not, at that time, file the return.

**9.** Stipulated Fact (G).

**10.** Debtor's answer to the Trustee's motion admits that the return had not been filed as of

October 20. The November 9 emergency motion states that the return had been filed.

**11.** Stipulated Fact (J).

**12.** Stipulated Fact (L).

**13.** Stipulated Face (N).

**14.** Stipulated Fact (M).

actions occurring prior to vacating the order of dismissal.

At the hearing on November 23, there was no objection to the Debtor's motion to vacate the order of dismissal. The Court granted the motion and signed an order that provides: "ORDERED that the Order of Dismissal entered October 29, 1999, is vacated . . ." [15]

## ADDITIONAL FINDINGS OF FACT COMBINED WITH CONCLUSIONS OF LAW AND ANALYSIS

Neither of the parties to this dispute comes across as especially deserving protection in a court of equity.

The Debtor filed a chapter 13 bankruptcy case only *two months* after purchasing the vehicle that is in dispute here. Although she purchased the vehicle for $7,148 (and financed $6,072 of that amount), Debtor asserted that the vehicle was only worth $4,300 and Debtor's plan only proposed to repay that amount.[16] On the other hand, as discussed more fully below, either through gross negligence or willful misconduct, Gulf States addressed the repossession notice to the Debtor at an incorrect address and never did give the Debtor any notice that Gulf States would sell the vehicle at a public auction. Finally, notwithstanding the fact that the vehicle had been purchased by the Debtor only eight months earlier for $7,148. Gulf States asserts that the auction sale for $1,854.75 was a commercially reasonable transaction.

Continuing to assess the equities of the case, the Court concludes that the Debtor is clearly at fault for dismissal of this case, which dismissal resulted in this dispute. Despite the provisions of the Internal Revenue Code establishing deadlines for filing tax returns, and despite a court order (served three different ways on the Debtor and her counsel), the Debtor failed to file

her 1998 federal income tax return until October or shortly thereafter—at least six months late under the Internal Revenue Code and at least four months late based on the Court's Initial Order. In addition, when she finally did file her tax return, she did not comply with the requirements of the Initial Order to serve copies on IRS Special Procedures or on the chapter 13 trustee. The Debtor did not timely file a pleading indicating that the return had been filed and did not appear at the October 26 hearing to inform the Court that the return had been filed. In essence, the ultimate cause of this dispute was Debtor's failing to comply with the specific procedures established by the Court to avoid inefficient case administration.

On the other hand, Gulf States rushed to repossession and to sale without regard for the requirement to send notice to the correct address, without clearly indicating in the notice how and when the collateral would be sold, and without disclosing the imminent sale despite being engaged in direct conversations with Debtor's counsel. After consideration of all of the facts and circumstances, the Court is convinced that Gulf States intentionally violated the contract and the law so that it could sell the vehicle prior to the hearing on reinstatement of the case.

The Debtor is also at fault in causing the events at issue in this case because the Debtor did nothing to reinstate her case between October 26 (when the case was dismissed) and November 8 (when her car was repossessed). Only after the car was repossessed did she file an emergency motion to reinstate and inform the Court, for the first time, that she had finally filed her tax return.

Therefore, while the Court ultimately finds that Gulf States is responsible for damages caused by its breach of contract

---

**15.** Docket # 20.

**16.** A $2,000 decline in value over 60 days is questionable under the principles established

in *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

and law, the Court will not award punitive damages and will not award the full amount of damages requested for loss of wages.

## SPECIFIC ALLEGATIONS, AND FINDINGS AND CONCLUSIONS

*Whether notice of repossession and sale were adequate:*

■ First, there is the matter of the address to which the notice of repossession was sent. In the stipulated facts, the parties agreed that a Notice of Repossession and right to Redeem ("Notice") was sent to

Frank, Crystal

3418 Summer Tree Drive

Houston, TX 77241 [17]

It is clear that this notice was never received by Debtor or by her counsel. Debtor had moved to another address shortly before the repossession of the vehicle.

Gulf States argues that it fulfilled all of the contractual and statutory requirements by sending this notice, regardless of whether the address was correct. Gulf States argues that Debtor specified her address in the Retail Installment Contract and that the Debtor had a duty under the contract to inform Gulf States of any change in her address. This argument is ludicrous. First, the address that Gulf States used is *not* the address given in the contract. Although it is not clear where

Gulf States obtained the address to which the notice was sent, it *is* clear that the contract was *not* the source. Therefore, Debtor's failure to update the address is not the source of the error. But even more important, the Debtor *did* give Gulf States a correct mailing address when she filed her bankruptcy case. In fact, Gulf States addressed mail to her at this address during the course of the case.[18] Yet, when Gulf States sent a notice of repossession, it did not use the correct address that the Debtor provided. Second, the vehicle was repossessed from the Debtor's new address. If Gulf States could find the Debtor to repossess the vehicle, it seems that they could find her address to send her a notice of repossession and sale.

In addition, regardless of what address was put on the notice, it is beyond cavil that the notice does not comply with the contract or with the law. The contract requires notice of the time and place of public sale. The notice contains no such information. The notice required by the contract and by state law is not difficult to give. Gulf States presented no evidence concerning why it did not give proper notice.

The combination of these factors is more than sufficient to convince the Court that Gulf States intentionally failed to give proper notice so that the sale would take place before the hearing on reinstatement of the case. The Court also reaches this conclusion because Gulf States' counsel failed to disclose the proposed sale when

---

**17.** At trial, it became apparent that Debtor never had any connection with that address. Then Gulf States' counsel argued that he had made a mistake and that the notice was actually sent to

Frank, Crystal

8418 Summer Tree Drive

Houston, TX 77241. [Emphasis Supplied.] The Court has looked carefully at Exhibit 2. Although it is possible, as counsel argues, that it is simply a bad copy, the Court is not convinced. The second "8" in the address is clear. Based on the evidence introduced at trial, the Court believes that the notice was not addressed properly, or if it was, the ad-

dress was so difficult to make out that it is probable that it was not delivered to the right address. The illegible address is attributable to Gulf States. At any rate, as indicated above, the Court definitively finds that Gulf States recklessly or willfully ignored Debtor's correct address and that neither the Debtor nor her counsel received the notice.

**18.** Debtor's testimony. *See also* docket # 6 in this case, Gulf States' counsel's notice of appearance and request for notices. Gulf States' counsel served that notice on Debtor at her proper post office address.

374

personally notified by Debtor's counsel that he had filed a motion to reinstate the bankruptcy case. Gulf States thus avoided a motion by the Debtor for a more expedited hearing. Gulf States does not deny these charges when made by the Debtor. Gulf States rested on its interpretation of the law as not requiring more effective disclosure and not requiring any disclosure whatsoever to Debtor's counsel.

*Whether there was a violation of the Bankruptcy Code § 362 stay:*

The Debtor argues that the repossession of the vehicle technically violated the automatic stay. Debtor's counsel, in his Response to Motion for Summary Judgement, argues as follows. Bankruptcy Code § 541 included the vehicle as property of the estate. Bankruptcy Code § 362(c)(1) provides that the automatic stay continues, with respect to property of the estate, until the property ceases to be property of the estate. Under FRBP 9001(7), the order dismissing the case was a "judgment." FRBP 9014 and 7062 provide that Rule 62 of the FRCP applies to judgments entered in contested matters. FRCP 62 provides that no action may be taken in enforcement of a judgment for 10 days following its entry. The order dismissing the case was entered October 29, 1999. Repossession occurred November 8, 1999, exactly 10 calendar days later. Therefore, the order dismissing the case was not yet final and repossession was premature.

■ The authority is almost unanimously to the contrary. An order dismissing a case is not subject to the limitations of FRBP 7062. It is effective immediately upon entry and the stay terminates immediately. *Fish Market Nominee Corp. v. Pelofsky,* 72 F.3d 4 (1st Cir.1995); *In re de Jesus Saez,* 721 F.2d 848 (1st Cir.1983), *In re Weston,* 101 B.R. 202 (Bankr.E.D.Cal. 1989), *aff'd,* 123 B.R. 466, 1991 WL 7112 (9th Cir. BAP 1991), *aff'd,* 967 F.2d 596, 1992 WL 151867 (9th Cir.1992), *cert. de-*

*nied,* 506 U.S. 1051, 113 S.Ct. 973, 122 L.Ed.2d 128, (1993); *In re Doherty,* 229 B.R. 461 (Bankr.E.D.Wash.1999); *See also In re Lashley,* 825 F.2d 362 (11th Cir. 1987), *cert. den.* 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013, *reh'g denied* 485 U.S. 1016, 108 S.Ct. 1493, 99 L.Ed.2d 720; *In re Thomas,* 194 B.R. 641 (Bankr.D.Ariz. 1995). Therefore, Debtor's first argument is rejected.[19]

■ Second, Debtor argues that even if the preceding reasons were not sufficient, the order of dismissal was *vacated.* Debtor argues that when the order of dismissal was vacated, all of its consequences (including termination of the automatic stay) were terminated. Therefore, Debtor argues the stay remained in effect because the vehicle remained as property of the estate.

The Court also rejects this argument. Once the stay has terminated, it is not reimposed by reinstating a case, at least not with respect to foreclosure sales that have occurred prior to the reinstatement. *See* the cases cited above as authority for the proposition that the stay terminates immediately upon dismissal. *See also In re Nagel,* 245 B.R. 657 (D.Ariz.1999).

There are cases, such as *In re Nail,* 195 B.R. 922 (Bankr.N.D.Ala.1996) which hold that an order reinstating a case also reinstates the automatic stay with respect to creditor conduct that occurs *subsequent* to the reinstatement. The Court specifically declines to consider that issue here, and holds merely that even if a case is reinstated, the automatic stay is not retroactively reinstated with respect to creditor conduct that occurred between the dismissal and the reinstatement.

■ To be complete, it should be apparent that even if the Court were to conclude that Gulf States violated the automatic stay, the Court would not consider these circumstances to be appropriate for the award of punitive damages because the

**19.** *See also* 10 *Collier on Bankruptcy* ¶ 7062.02 (rev. 15th ed.1999).

Debtor's own conduct so substantially contributed to the damages.[20]

## TEXAS BUSINESS AND COMMERCE CODE

Texas Business and Commerce Code § 9.504(c) requires a secured party to send to the debtor "reasonable notification of the time and place of any public sale." Texas Business and Commerce Code § 9.507(a) provides that a sale violative of § 9.504 entitles the debtor "to recover from the secured party any loss caused by a failure to comply with the provisions of this subchapter." As noted above, (i) the notice sent by Gulf States was sent to an "old" address, (ii) the Debtor never received the notice because the Debtor had moved to a new address prior to the date that Gulf States sent the notice, (iii) Gulf States did not use the address provided by the Debtor in the contract, (iv) the Debtor gave Gulf States a correct address when the case was filed and Gulf States used the correct address in prior correspondence with the Debtor in the case, but Gulf States ignored the correct address to give the notice of repossession, (v) Gulf States was able to find Debtor's correct address to repossess the car, but apparently was unable to find the correct address to give the notice, and (vi) in conversations with Debtor's counsel, Gulf States intentionally withheld notice that the sale would take place prior to a hearing in this court on reinstatement of the case. Finally, the notice that was actually sent was only a notice of repossession, not a notice of sale, and does not specify the time and place of the public sale.

Even if the Court were incorrect in concluding that Gulf States intentionally failed to give proper notice of the sale of the collateral, it seems exceptionally clear that Gulf States did not comply with the contractual or the statutory requirement to send to the Debtor reasonable notification of the time and place of the public sale.

*Amount of Damages*

The Debtor testified that she lost her job because she lost her car. She also testified that she has been unable to find a job since November, 1999. The Debtor did not testify concerning what kind of work she does, nor did she testify concerning what efforts she has made to find new work. The Debtor testified that she is unable to find work unless she has a car; but that testimony is simply self-serving, unsubstantiated, and not credible. While it might be true that the Debtor lost a few months work, it is not credible that she has been unable to find work for almost a year because she does not have a car.

Debtor testified that when she was employed she "took home" $1,200 to $1,300 per month. The Court will allow damages equal to 3 months lost income: $3,750. The Court sees insufficient evidence to conclude that the Debtor could not obtain new employment after 3 months. In addition, the Court will disallow any claim in this case asserted by Gulf States.[21] Finally, the Court will allow attorney's fees in the amount of $ 7,213.35.[22]

---

**20.** Bankruptcy Code § 362(h) provides that an individual injured by a willful violation of the automatic stay may recover punitive damages "in appropriate circumstances." The Court does not consider this to be "appropriate circumstances."

**21.** Bankruptcy Code § 502(j).

**22.** Fees accrued pre-trial of $6,763.35 and $450 allowed for 2 hours at trial.