United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 20, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 03-11143

_____

In the Matter of: DAWN M. STEMBRIDGE
            Debtor

-----------------------------------------------------------------

CHASE MANHATTAN BANK USA NA,

                                                    Appellant - Cross - Appellee,

versus

DAWN M. STEMBRIDGE,

                                                    Appellee - Cross - Appellant.

_____

Appeals from the United States District Court
For the Northern District of Texas

_____

Before DEMOSS, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

        Creditor appeals from the bankruptcy court's valuation of creditor's secured collateral for the

purposes of confirming debtor's cram-down plan. The bankruptcy court ruled that the value of the

collateral would be the greater of two values, one premised on the collateral's foreclosure value as

of the petition date, and the other based on the replacement value determined as of the plan

1

confirmation date. Because we hold that the bankruptcy court erred in its valuation, we reverse and remand.

I.

On August 13, 1999, Dawn Stembridge ("Stembridge") entered into a contract with King Charles Hillard Ford to purchase a 1999 Ford F-150 StyleSide SuperCab with a V-8 engine ("the Truck"). The total debt incurred by Stembridge under the contract was $32,244.03 (after a $1,000 down payment) to be paid in monthly installments of $414.69 beginning on September 12, 1999. Chase Manhattan Bank USA ("Chase") underwrote the purchase of the Truck, on which it owns a properly-perfected lien.

On August 22, 2001, Stembridge filed for Chapter 13 bankruptcy relief. At that time, Stembridge owed to Chase a balance of $22,946.57. On September 10, 2001, Stembridge filed a preliminary plan that valued the Truck at $9,540.00—the Truck's foreclosure value at the time. On the same day, Stembridge filed an Authorization for Pre-Confirmation Disbursement ("APD"), through which Stembridge was to pay Chase $119.25 per month as adequate protection for the Truck.[1]

Under Stembridge's proposed plan, she was to keep the Truck over Chase's objection under the code's so-called "cram-down" provision.[2] *See* 11 U.S.C. § 1325(a)(5). Chase challenged the proposed plan, arguing that Chase's secured claim equaled the replacement value of the Truck, an

---

[1] Under the Northern District of Texas's General Order 98-4, the monthly payments were calculated at 1.25% of the asset value. The $119.25 monthly payments were calculated from the $9,540 foreclosure value of the Truck.

[2] This provision of the code allows a debtor to retain and use secured collateral post-confirmation. It is termed "cram-down" because the debtor may keep the collateral over the creditor's objection.

amount greater than the foreclosure value. Chase contended that the value should be determined as of the petition filing date which, given the depreciation of the Truck, is an amount more than the value determined as of the confirmation date. Chase also argued that the APD payments it received were deficient because they were based on the Truck's foreclosure value, and not the replacement value.

The bankruptcy court ruled that Chase was entitled to the greater of two amounts: the replacement value calculated at the time of plan confirmation (November 2002), or the "Trade Value," an amount premised on the foreclosure value of the Truck, determined as of the date that adequate protection was first provided (September 2001).[3] It concluded that the Trade Value was greater ($12,825.00); subtracting the previously remitted APD payments ($1,311.75), the bankruptcy court determined that in order to be confirmed, the plan needed to provide Chase the present value of $11,513.25. The court also rejected Chase's argument that the APD payments constituted inadequate protection for its depreciating collateral, holding that any deficiency was captured by Chase's secured claim. The district court affirmed the rulings of the bankruptcy court, and Chase timely filed this appeal.

II.

In reviewing the ruling of a bankruptcy court, we use the same standard of review as the district court. *See, e.g., In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003). "Valuation is a mixed question of law and fact, the factual premises being subject to review on a clearly erroneous standard, and the legal conclusion being subject to *de novo* review." *In re T-H New Orleans Ltd. Partnership*,

---

[3] The bankruptcy court used the N.A.D.A. Official Used Car Guide Trade Value to calculated the Trade Value. To determine the replacement value, the bankruptcy court averaged the Used Car Guide with the Kelley Blue Book Private Party Value.

3

116 F.3d 790, 799 (5th Cir. 1997) (citing *In re Clark Pipe & Supply Co., Inc.*, 893 F.2d 693, 697–98

(5th Cir. 1990)).

III.

Chase challenges two of the bankruptcy court's rulings. The first is the court's determination

that the Truck should be valued at the greater of two amounts: either the replacement value

determined as of November 2002 (the confirmation date), or the foreclosure value as of September

2001 (the date when the APD payments were authorized). In analyzing this holding, we are faced

with the following novel question: when should a bankruptcy court determine the value of a secured

claim for the confirmation of a plan under the code's cram-down provision. Second, Chase

challenges the sufficiency of the APD payments, arguing that it has a § 507(b) priority claim for the

deficiency. We discuss each in turn.

A.

In order to value the amount of a creditor's secured claim, § 506(a) states that the "value [of

an allowed secured claim] shall be determined in light of the purpose of the valuation and of the

proposed disposition or use of such property." 11 U.S.C. § 506(a); *see also Assocs. Commercial

Corp. v. Rash*, 520 U.S. 953, 961 (1997). Valuation under § 506(a) thus differs depending on the

purpose and circumstances for which it is undertaken. In *Rash*, the Supreme Court held that, with

respect to confirmation of a cram-down under § 1325(a), § 506(a) requires a replacement-value

standard for determining the amount of an allowed secured claim for depreciating assets. *Rash*, 520

U.S. at 962. Only that value, the Court held, gave significance to the "purpose of the valuation" and

the "proposed disposition or use" of the property. *Id.* In doing so, the Court explicitly held that §

506(a) does *not* allow for a foreclosure value standard: "Applying a foreclosure-value standard when

4

the cram down option is invoked attributes no significance to the different consequences of the debtor's choice to surrender the property or retain it." *Id.* Where, as here, the collateral is being retained by the debtor for purposes of confirming a § 1325(a) cram-down plan, a foreclosure standard is inappropriate. *Id.*

In valuing Chase's secured claim at the initiation of APD payments, the bankruptcy court used the Trade Value. In doing so, the bankruptcy court erred. The problem is not with the Trade Value as such; bankruptcy courts have wide discretion in determining the replacement value. *Rash*, 520 U.S. at 963 n.6. Had the bankruptcy court determined that the replacement value was best captured by the Trade Value, we would find no error. However, the bankruptcy court explicitly premised the Trade Value on the foreclosure value of the vehicle, contrary to *Rash*'s holding. We see no principled distinction, and Stembridge fails to propose any, between this case and *Rash*.[4] The purpose of this valuation, as in *Rash*, is for plan confirmation under § 1325(a). Because *Rash*'s holding applies, we hold that the bankruptcy court erred in disregarding it.[5]

---

[4] The only potential distinguishing feature is that a period of over a year elapsed between the filing and the confirmation, whereas in *Rash* the filing and confirmation were contemporaneous. This, however, is irrelevant to the disposition of the property post-confirmation; even if one argues that as of the petition's filing it is unclear whether the debtor will ultimately retain the property, and thus it is possible that a foreclosure *may* take place, in this case Stembridge retained the Truck throughout the pendency of bankruptcy. *See Rash*, 520 U.S. at 963 ("[T]he actual use, rather than the foreclosure sale that will not take place"—or in this scenario, *did not* take place—"is the proper guide under a prescription hinged on the property's 'disposition or use.'").

[5] Although the bankruptcy court used the Trade Value to determine the extent of adequate protection payments at the filing of the petition, *Rash* interprets § 506(a) with respect to cram-downs only. Therefore, our holding does not extend to the bankruptcy court's use of the Trade Value to set the APD.

The bankruptcy court also ruled that the replacement value, determined as of the confirmation date, is a possible benchmark for valuation of the Truck. The question with respect to this ruling is, at what point in time should a secured asset be valued for the confirmation of a cram-down plan?[6] This was not specifically addressed in *Rash*. We first note that the language of the cram-down provision implies that the value should not be determined as of the confirmation date. Section 1325(a) states that "the value, as of the effective date of the plan, of property to be distributed . . . is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii). Because the value of the secured creditor's claim to be disbursed is as of the confirmation date—the "effective date of the plan"—then by defining the allowed claim also as of the confirmation date, the words "is not less than the allowed amount of such claim" become superfluous. Moreover, the code does not dictate a valuation at some point between filing and confirmation. If the code provides for neither the confirmation date nor some intermediate time before that date as the proper date for valuation, then the value of the creditor's interest must be determined vis-à-vis the amount of its interest at the institution of the bankruptcy proceedings—*i.e.*, the filing date.

The code's scheme of protecting the value of an asset against depreciation from the date of the filing provides support for this approach. The automatic stay is instituted at the filing of the petition. *See id.* at § 362(a). It is at that point that the protection of secured creditors' assets begins with the provision of adequate protection: section 362 connects the continuation of the automatic stay to the provision of adequate protection, which may be provided by "requiring the trustee to make a

---

[6] We note that in many, if not most, cases involving a cram-down, the plan is confirmed along with, or shortly thereafter, the filing of the original petition. Appellant's counsel at oral argument stated that many of the districts in this Circuit confirm plans concurrently with the filing of the petition. In such cases, this valuation will pose little problem, as the filing and confirmation dates will be roughly the same.

cash payment or periodic cash payments . . . to the extent that the stay under section 362 . . . results *in a decrease in the value* of such entity's interest in such property." *Id.* at § 361(1) (emphasis added). Therefore, the code specifically ensures the protection of a secured creditor's assets against any decrease in value from the beginning of the automatic stay, and, because the stay is instituted the moment the petition is filed, the protection from depreciation also begins at that moment. This is the tradeoff the automatic stay creates for creditors and debtors: creditors are prevented from seizing their secured assets in order to provide debtors with "breathing room" to reorganize; in return, the creditors' present value is preserved throughout the reorganization through adequate protection (and priority of its claim). It follows that this protection extends to the debtor's proposed plan itself.

A later valuation date would eviscerate value of the secured creditor's claim for a depreciating asset—for each day after the filing, the value of the collateral decreases, and the deficiency is neither captured through adequate protection nor, under the bankruptcy court's test, the confirmation plan itself. Moreover, the bankruptcy court's order can result in an extra penalty to the creditor. Adequate protection, properly defined, is the amount of an asset's decrease in value from the petition date. *See, e.g.*, *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 370 (1988). Under the bankruptcy court's formulation, adequate protection may sometimes be deducted from the value of the replacement value as of the confirmation date. That value, however, already reflects the amount of depreciation that the capital suffered from the petition date. By deducting adequate protection from this amount, the bankruptcy court's test may serve as a double penalty upon the creditor with no warrant under the bankruptcy code.

Summarizing our analysis, the code entitles the secured creditor to the present value of its claim at the institution of the automatic stay. Therefore, to the extent that the bankruptcy court based

the value of the Truck on its value as of the confirmation date, it erred. We hold that in order to confirm a plan under §1325(a), the value of the collateral should be determined as of the filing of the petition, and that the plan should provide the replacement value less any adequate protection payments already paid.[7]

B.

Chase also contends that the APD payments that Stembridge provided, namely the $119.25 monthly remittances, were insufficient because they were based on the Truck's foreclosure value. Chase argues that it is owed a § 507(b) priority claim for that alleged deficiency. Although a different valuation standard may be necessary under § 506(a) for adequate protection payments, *see* 11 U.S.C. § 506(a); *In re Stark*, 311 B.R. 750, 756 (N.D. Ill. 2004), because we hold that Chase is entitled to the replacement value as of the petition date, an amount that necessarily includes any deficiency in adequate protection payments, we need not address this question.

IV.

Because the bankruptcy court erred in valuing the Truck, we REVERSE its decision and REMAND the case to the bankruptcy court to determine the amount of Chase's claim using the replacement value of the Truck at the time of the filing.

---

[7] This approach has already been adopted by at least one bankruptcy court in this Circuit. *See In re Longbine*, 256 B.R. 470, 475 (S.D. Tex. 2000).