

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-26-00045-CV

_____

RAY DOUGLAS GRIFFITH, Appellant

V.

LINDSAY D. STEELE AND STEELE LAW FIRM PLLC, Appellees

---

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-370088-25

---

Before Sudderth, C.J.; Kerr, J.; and Wallach, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Appellant Ray Douglas Griffith sued his former bankruptcy attorney and her firm, Appellees Lindsay D. Steele and Steele Law Firm PLLC (collectively Steele), for legal malpractice and negligence when an involuntary dismissal of Griffith's Chapter 13 bankruptcy case led to his losing his family ranch at a foreclosure sale in the gap before his bankruptcy case was reinstated. Steele moved to dismiss Griffith's claims under Rule 91a—a motion the trial court granted. At issue in this appeal is whether the trial court properly determined that limitations barred Griffith's claims against Steele. Because the trial court correctly ordered dismissal on that basis, we will affirm.

## I. Background

### A.    The Alleged Legal Malpractice[1]

Over 20 years ago, Griffith bought around 200 acres in Cisco, Texas, that he described as his "beloved family ranch" and that became his father's "final resting place." Griffith financed the ranch's purchase with a loan from Lone Star Bank.

In late 2018, Griffith began experiencing financial difficulties, and he engaged Steele to file a Chapter 13 bankruptcy case on November 4, 2019. Griffith filed for bankruptcy primarily to protect his interest in his ranch. To that end, upon his filing,

---

[1]The underlying facts are disputed, but because this appeal involves a Rule 91a motion, we take as true Griffith's allegations about Steele's malpractice. *See* Tex. R. Civ. P. 91a; *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016).

the Bankruptcy Code's automatic-stay provision successfully stopped a foreclosure sale that Lone Star had scheduled for the next day. *See* 11 U.S.C. § 362.

But on December 4, 2019, the bankruptcy court dismissed Griffith's Chapter 13 case after he missed a December 2 deadline to file certain documents with the bankruptcy court. Griffith alleged that he had attempted to speak or meet with Steele "to get her the information needed to continue with the bankruptcy," and he further alleged—"[u]pon information and belief"—that he had given her the needed documents by the filing deadline. According to Griffith, despite his efforts, Steele failed to meet the filing deadline or to seek a filing extension, resulting in the case's dismissal.

Regardless of who is to blame, the automatic stay ended upon the case's dismissal, and Lone Star resumed its foreclosure efforts. Steele moved on December 9 to reinstate the bankruptcy case, but she did not also request an expedited reinstatement, so no bankruptcy stay existed to prevent Lone Star's proceeding with a foreclosure sale. Griffith's ranch was sold at a January 7, 2020 foreclosure sale.[2] Seven days later, the bankruptcy court reinstated Griffith's bankruptcy case, at which time the automatic stay went back into effect.

Seeking to "undo the results of [Steele's] negligence" and to recover what he had lost during the "gap" in which the automatic stay was not in place, Griffith hired

---

[2]The ranch sold for $102,000. It was valued at around $510,000, and Griffith owed Lone Star around $94,000.

3

another attorney to initiate an adversary proceeding in the bankruptcy court against Lone Star for breach of contract and wrongful foreclosure. The bankruptcy court ruled in Lone Star's favor. Griffith appealed first to the district court, which affirmed, and he appealed next to the Fifth Circuit Court of Appeals, which also affirmed in a January 30, 2023 decision.[3]

Griffith's pleadings do not indicate that Steele was involved in the adversary proceeding, but he alleged that she represented him in his Chapter 13 case "in his initial filing, through his bankruptcy's reinstatement in mid-January 2020, and during his bankruptcy plan, conveying information and maintaining [her] representation of him." When Griffith received the notice of his plan's completion on November 13, 2024, Steele filed the motion for entry of a discharge order, which the bankruptcy court signed on December 30, 2024.

## B.    The Legal-Malpractice Lawsuit

On September 11, 2025, Griffith sued Steele for legal malpractice and negligence. In response, Steele filed a Rule 91a dismissal motion, arguing that the two-year statute of limitations had expired before Griffith had filed suit. Specifically, Steele argued that Griffith's claims accrued on December 4, 2019, when the bankruptcy court dismissed Griffith's Chapter 13 case and the stay ended—the event

---

[3]*See Griffith v. Lone Star FLCA (In re Griffith)*, No. 19-44562-MXM-13, 2021 WL 2389671 (Bankr. N.D. Tex. June 10, 2021), *aff'd sub nom. Griffith v. Lone Star FLCA*, No. 4:21-cv-0825-P, 2022 WL 1289559 (N.D. Tex. Apr. 28, 2022), *aff'd*, No. 22-10527, 2023 WL 1095133 (5th Cir. Jan. 30, 2023) (per curiam).

4

that enabled Lone Star to sell the ranch at foreclosure during the gap created by Steele's not requesting the case's expedited reinstatement. She alternatively argued that Griffith's claims accrued "at the latest" on January 7, 2020—the date of the foreclosure sale.

Steele's Rule 91a motion also preemptively addressed the potential applicability of the tolling doctrine recognized in *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991). Steele quoted from *Hughes*: "[W]hen an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted." *Id.* at 157. She argued that the adversary proceeding in the bankruptcy case was the litigation resulting from the alleged malpractice and that the Fifth Circuit affirmed the bankruptcy court's ruling on January 30, 2023. Steele thus argued that even if the *Hughes* tolling doctrine applied, Griffith's September 11, 2025 filing came too late.

Griffith amended his petition to plead the *Hughes* tolling doctrine and responded to Steele's Rule 91a motion. Among other things, he argued that the reinstated bankruptcy case was the resulting litigation under *Hughes*, that Steele had represented Griffith through the bankruptcy court's December 30, 2024 discharge order, and that he had filed the underlying malpractice suit within two years of that date. Griffith replied and among other things (1) distinguished the adversary proceeding from the overall bankruptcy case and (2) argued that Steele's continued

5

representation of Griffith in the bankruptcy case after he had exhausted his appeals in the adversary proceeding did not impact the limitations analysis.

After considering the parties' filings, the trial court determined that Griffith's claims were "barred by the statute of limitations," granted Steele's Rule 91a motion, and dismissed Griffith's claims against Steele with prejudice. Griffith appealed.

## II. Discussion

On appeal, Griffith raises a single issue: whether "Steele's continuing representation of Griffith, throughout the bankruptcy in which he contends malpractice occurred, toll[ed] the statute of limitations on his legal[-]malpractice claim." He maintains that "[s]o long as [Steele was] representing [him] in the same bankruptcy case from which his malpractice claim arose, the statute of limitations was tolled as to such claim." Thus, he argues that the trial court erred by granting Steele's Rule 91a motion. We disagree.

### A. Standard of Review Governing Rule 91a Motions

A party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. Tex. R. Civ. P. 91a.1. A court may also grant a Rule 91a motion on limitations grounds. *See Quinn v. State Farm Lloyds*, No. 02-22-00191-CV, 2023 WL 3749932, at *10 (Tex. App.—Fort Worth June 1, 2023, no pet.). Such motions are permissible when the limitations affirmative defense is "conclusively established by the facts in a plaintiff's petition." *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex. 2020).

6

Dismissal is appropriate under Rule 91a "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought . . . [or if] no reasonable person could believe the facts pleaded." *Sanchez*, 494 S.W.3d at 724 (citing Tex. R. Civ. P. 91a). We review a Rule 91a motion's merits de novo because the availability of a remedy under the facts alleged is a question of law and because the rule's factual-plausibility standard is akin to a legal-sufficiency review. *Id.*

Rule 91a.6 does not allow a trial court to consider evidence. Tex. R. Civ. P. 91a.6; *Galindo v. Peterson*, No. 02-23-00268-CV, 2024 WL 1792377, at *2, *5, *6 (Tex. App.—Fort Worth Apr. 25, 2024, pet. denied). The trial court's factual inquiry is limited to "the pleading of the cause of action" and any pleading exhibits permitted by Texas Rule of Civil Procedure 59. Tex. R. Civ. P. 59, 91a.6; *see Bethel*, 595 S.W.3d at 656; *Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *8 (Tex. App.—Fort Worth Oct. 29, 2020, pet. denied). If a claimant's factual allegations in his pleadings, taken as true, and the reasonable inferences to be drawn from those allegations do not entitle the claimant to the relief sought, then the claim has no basis in law. *Fiamma Statler*, 2020 WL 6334470, at *8. But the trial court's legal inquiry is not as limited. *See Bethel*, 595 S.W.3d at 656. In its legal inquiry, a trial court may additionally consider the substance of the dismissal motion and any arguments presented at the hearing. *See id.* at 655.

## B. Legal Malpractice and the Statute of Limitations

Negligence and legal-malpractice claims are governed by a two-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a); *Zive v. Sandberg*, 644 S.W.3d 169, 174 (Tex. 2022). Limitations begin to run when the claim accrues, *see* Tex. Civ. Prac. & Rem. Code § 16.003(a), and other than in cases governed by the discovery rule, a claim accrues when the claimant sustains a legal injury, *see Hughes*, 821 S.W.2d at 156; *see also Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120 (Tex. 2001). A claim's accrual date is a legal question. *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011).

In addition to determining accrual, we also consider whether the limitations period has been tolled. In *Hughes* and *Apex*, the supreme court announced an equitable-tolling rule governing an attorney's malpractice "in the prosecution or defense of a claim that results in litigation": "[T]he statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted," *Hughes*, 821 S.W.2d at 157, "or the litigation is otherwise finally concluded," *Apex*, 41 S.W.3d at 119.[4] Adding to this general rule, in *Zive*, the court enunciated that "*Hughes* tolling applies only to all appeals in which the malpractice plaintiff participates." *Zive*, 644 S.W.3d at 179. Accordingly, *Hughes* tolling ends on the

---

[4]The court later extended the *Hughes* rule to toll limitations during the pendency of a third-party suit. *See Gulf Coast Inv. Corp. v. Brown*, 821 S.W.2d 159, 160 (Tex. 1991) (involving a client's suit against its lawyers based on the lawyer's actions in a foreclosure sale that had precipitated a wrongful-foreclosure suit against the client).

8

date on which the court where the underlying claim is pending rules on the malpractice plaintiff's last action regarding that claim. *See id.*

## C. Chapter 13 Bankruptcy Overview

Griffith's legal-malpractice case concerns his bankruptcy attorney's conduct leading up to and during the gap between the dismissal and reinstatement of his Chapter 13 bankruptcy case. "Chapter 13 of the Bankruptcy Code affords individuals receiving regular income an opportunity to obtain some relief from their debts while retaining their property," *Bullard v. Blue Hills Bank*, 575 U.S. 496, 498, 135 S. Ct. 1686, 1690 (2015), and a Chapter 13 bankruptcy plan is "an exchanged for bargain between the debtor and the debtor's creditors," *Wells Fargo Bank, N.A. v. Oparaji (In re Oparaji)*, 698 F.3d 231, 238 (5th Cir. 2012). A debtor "must propose a plan to use future income to repay a portion (or in the rare case all) of his debts over the next three to five years." *Bullard*, 575 U.S. at 498, 135 S. Ct. at 1690. In exchange, the debtor can retain his property, and, "[i]f the bankruptcy court confirms the plan and the debtor successfully carries it out, he receives a discharge of his debts[,]" *id.*, giving the debtor a "fresh start," *Harris v. Viegelahn*, 575 U.S. 510, 513, 135 S. Ct. 1829, 1835 (2015).

We mention three other pertinent aspects of the process:

**First**, once a debtor files for bankruptcy, an automatic stay arises in the debtor's favor. 11 U.S.C. § 362(a); *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 353 (5th Cir. 2008). The stay prohibits "all entities" from making collection efforts against the debtor or his bankruptcy estate's property. 11 U.S.C. § 362(a). In

9

essence, the automatic stay guarantees "'breathing room' for a debtor and the bankruptcy court to institute an organized repayment plan," *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 301 (5th Cir. 2005) (quoting *Chase Manhattan Bank USA NA v. Stembridge (In re Stembridge)*, 394 F.3d 383, 387 (5th Cir. 2004)), and "[i]t allows for the equitable disbursement of estate property among creditors," *id.* (citing *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003)).

But if a Chapter 13 case is closed or dismissed, "the automatic stay terminates." *In re Carlsson*, No. 24-51952, 2024 WL 4806638, at *2 (Bankr. W.D. Tex. Nov. 1, 2024) (citing 11 U.S.C. § 362(c)(2)); *Richard D. Davis, L.L.P. v. Knott*, No. 14-17-00257-CV, 2019 WL 438788, at *10 (Tex. App.—Houston [14th Dist.] Feb. 5, 2019, pet. denied). A "pre-discharge dismissal . . . returns the parties to the positions they were in before the case was initiated." *Oparaji*, 698 F.3d at 238 (citation modified). Thus, the "return to pre-bankruptcy rights enables creditors to resume debt collection and other acts to protect their interests." *In re Orosco*, No. 19-60038, 2020 WL 6054695, at *8 (Bankr. N.D. Tex. Oct. 13, 2020).

Although the Bankruptcy Code and Rules do not expressly provide for the reinstatement of a dismissed case, debtors can seek reinstatement as "a judicially created fiction . . . to spare [them] the burden of filing a new case." *Id.* at *5 (quoting *In re Murphy*, 493 B.R. 576, 579 (Bankr. D. Colo. 2013)). One consequence of a Chapter 13 case's being dismissed and later reinstated is that if a secured creditor took action against a debtor's property in the gap before reinstatement, the automatic stay

10

will not be retroactively applied to undo the creditor's actions. *Id.*; *Frank v. Gulf States Fin. Co. (In re Frank)*, 254 B.R. 368, 374 (Bankr. S.D. Tex. 2000). This "balance[s] the rights of both the debtor and the creditors." *Orosco*, 2020 WL 6054695, at *8 (quoting *Murphy*, 493 B.R. at 580).

**Second**, bankruptcy disputes take two distinct forms: (1) contested matters initiated by filing a motion in the main bankruptcy case; and (2) adversary proceedings initiated by filing a complaint creating "a separate lawsuit treated similarly to a civil suit outside of bankruptcy." *In re CTLI, LLC*, 534 B.R. 895, 905 (Bankr. S.D. Tex. 2015) (citing *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 762–63 (5th Cir. 1995)). Bankruptcy Rule 7001 lists the types of disputes that can be resolved in an adversary proceeding, including a proceeding to recover money or property. Fed. R. Bankr. P. 7001(a).

Treated as "free[]standing lawsuit[s]" that are "totally separate from the bankruptcy case," *In re Roberts*, 570 B.R. 532, 537 n.12 (Bankr. S.D. Miss. 2017),

> [a]dversary proceedings are not filed in bankruptcy cases. Adversary proceedings are filed separately from a bankruptcy case. An adversary proceeding can be filed long after a bankruptcy case has been filed and even after a bankruptcy case has been closed. An adversary proceeding is given its own adversary proceeding number[,]

*Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436, 454–55 (Bankr. S.D. Tex. 2008). "Consistent with adversary proceedings being distinct from the underlying bankruptcy [case], an order disposing of an adversary proceeding is appealable as a final order, even though the bankruptcy case has not ended." *Cox v.*

11

*Richards*, No. 3:16-CV-00668, 2017 WL 7693446, at *5 (S.D. Miss. Sept. 26, 2017) (citing *Smith v. Seaside Lanes (In re Moody)*, 825 F.2d 81, 85 (5th Cir. 1987)), *aff'd*, 761 F. App'x 244 (5th Cir. 2019); *Tiburon Land & Cattle, LP. v. Stephens*, 675 B.R. 14, 16 (N.D. Tex. 2025).

Because "adversary proceedings are discreet judicial units," a litigant must appeal the adversary proceeding's final ruling and cannot wait to appeal it in the main bankruptcy case. *Kreit v. Quinn (In re Cleveland Imaging & Surgical Hosp., L.L.C.)*, 26 F.4th 285, 293 (5th Cir. 2022) (quoting *Dorsey v. U.S. Dep't of Educ. (In re Dorsey)*, 870 F.3d 359, 362 (5th Cir. 2017)). Once final, bankruptcy-court orders generally operate to preclude relitigating the decided issues. *See Katchen v. Landy*, 382 U.S. 323, 334, 86 S. Ct. 467, 475 (1966) ("The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts."); *Blum v. Restland of Dall., Inc.*, 971 S.W.2d 546, 550–51 & nn.12–17 (Tex. App.—Dallas 1997, pet. denied) (discussing the finality of bankruptcy-court orders and their potential preclusive effect).

**Third**, and finally, Chapter 13 "[d]ebtors have an affirmative, ongoing duty to disclose all assets, including contingent and unliquidated claims and potential causes of action." *U.S. ex rel. Long v. GSD&M Idea City LLC*, No. 3:11-CV-1154-O, 2014 WL 11320447, at *4 (N.D. Tex. June 10, 2014), *aff'd sub nom. U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265 (5th Cir. 2015). When a Chapter 13 bankruptcy case is filed, "the bankruptcy estate includes, among other property, 'all legal or

12

equitable interests of the debtor in property.'" *In re Hazlewood*, 570 B.R. 557, 560–61 (Bankr. N.D. Tex. 2017) (quoting 11 U.S.C. § 541(a)(1)). Chapter 13 estates also include "all property . . . that the debtor acquires after the commencement of the case but before the case is closed, dismissed[,] or converted . . . whichever occurs first." *Id.* at 561 (quoting 11 U.S.C. § 1306(a)).

Thus, a Chapter 13 bankruptcy estate includes any causes of action belonging to the debtor before and after filing the bankruptcy case but before it is closed, dismissed, or converted. 11 U.S.C. §§ 541(a)(1), 1306(a); *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988) (concerning pre-petition claims); *Hazlewood*, 570 B.R. at 561 (discussing post-petition claims); *see also In re Wilson*, 555 B.R. 547, 550 (Bankr. W.D. La. 2016). And this would include the debtor's legal-malpractice claims—potentially even those involving the debtor's bankruptcy counsel. *See, e.g., Jackson v. Marlette (In re Jackson)*, 317 B.R. 573, 575 (Bankr. D. Mass. 2004) (concluding that debtor's malpractice claim against his former bankruptcy counsel—whether it arose pre-petition or post-petition—was property of the Chapter 13 bankruptcy estate); *cf. Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A. v. Alvarez (In re Alvarez)*, 224 F.3d 1273, 1277, 1279–80 (11th Cir. 2000) (holding that a legal-malpractice claim arising from Chapter 7 bankruptcy counsel's alleged pre-petition negligence accrued at the moment of filing and was the estate's property); *Macon v. Meredith (In re Macon)*, 669 B.R. 626, 650–59 (Bankr. S.D. Ga. 2025) (analyzing post-petition

legal-malpractice claim and determining that it was not Chapter 13 estate property because of the case's closure).

**D.    Analysis**

Both parties agree that Griffith's legal-malpractice claim is governed by a two-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a); *Zive*, 644 S.W.3d at 174. In addition, they do not dispute when Griffith's legal-malpractice claim accrued. Steele argued in his Rule 91a motion that the claim arose either on December 4, 2019—the date the bankruptcy case was first dismissed—or at the latest on January 7, 2020—the date of the foreclosure sale, and Griffith offered no counter-position. Because the accrual date is not disputed, we assume without deciding that the trial court correctly applied the later January 7, 2020 accrual date. *See Shield v. Bio-Synthesis, Inc.*, No. 02-21-00160-CV, 2022 WL 2840111, at *4 (Tex. App.— Fort Worth July 21, 2022, no pet.).

Turning to the *Hughes* tolling doctrine's application, we consider Griffith's contention that "Steele's continuing representation of [him] throughout the bankruptcy [case] in which he contends malpractice occurred[] toll[ed] the statute of limitations on his legal-malpractice claim." The flaw in Griffith's position is that the adversary proceeding he initiated to "undo the results of [Steele's] negligence" was a freestanding lawsuit, totally separate from the overall bankruptcy case. *See Zale Corp.*, 62 F.3d at 762–63; *Roberts*, 570 B.R. at 538; *CTLI*, 534 B.R. at 905; *Rodriguez*, 396 B.R. at 454–55.

14

The bankruptcy court's order in the adversary proceeding was a final, appealable order that operated to preclude relitigating the issues decided concerning the ranch foreclosure sale. *See Cleveland Imaging & Surgical Hosp.*, 26 F.4th at 293; *Moody*, 825 F.2d at 85; *Tiburon Land & Cattle*, 675 B.R. at 16. Applying the *Hughes* rule "categorically" in a "clear and strict manner"—as we must—when the Fifth Circuit issued its January 30, 2023 decision, Griffith had exhausted his appeals on the underlying claim resulting from Steele's alleged malpractice, and that litigation—the adversary proceeding—was finally concluded. *See Zive*, 644 S.W.3d at 179; *Apex*, 41 S.W.3d at 119; *Hughes*, 821 S.W.2d at 157.

Griffith insists that the trial court should have looked beyond the adversary proceeding and to the overall bankruptcy case, in which Steele continued to represent him through his December 30, 2024 discharge. He argues that "[t]here is no precedent for determining that a Chapter 13 debtor must sue his own attorney to keep the statute of limitations from running on his malpractice claim." But this is not entirely accurate.

Neither party has found a case similar to this one in which a Texas court has addressed a legal-malpractice claim after the conclusion of a Chapter 13 bankruptcy case in which a party initiated an adversary proceeding to undo his bankruptcy counsel's alleged negligence occurring in the Chapter 13 bankruptcy case.[5] Nor have

---

[5]Griffith cites *Guillot v. Smith* for the proposition that we should look to the conclusion of his Chapter 13 bankruptcy case as the operative date under *Hughes*, but

15

we. But because Chapter 13 debtors have an affirmative, ongoing duty to disclose estate assets—including both pre-petition and post-petition legal-malpractice claims—Griffith was required to disclose any alleged legal-malpractice claim against Steele arising out of the foreclosure sale during the pre-reinstatement gap period.[6] *See* 11 U.S.C. §§ 541(a)(1), 1306(a); *Alvarez*, 224 F.3d at 1277, 1279–80; *La. World Exposition*, 858 F.2d at 245; *Hazlewood*, 570 B.R. at 561; *Wilson*, 555 B.R. at 550; *Jackson*, 317 B.R. at 575.

Griffith also predicates his argument on whether *Hughes*'s policy aims would be served by applying its tolling rule to the bankruptcy case's final conclusion instead of the adversary proceeding's final conclusion.[7] But the supreme court has rejected such

---

the debtor in *Guillot*—a Chapter 7 bankruptcy case—did not initiate an adversary proceeding to litigate the issue that the debtor's lawyer had allegedly caused through post-petition conduct. 998 S.W.2d 630, 633 (Tex. App.—Houston [1st Dist.] 1999, no pet.). In addition to this critical procedural difference, we also note that Chapter 13 estates are broader than Chapter 7 estates and include post-petition property. *In re Easley-Brooks*, 487 B.R. 400, 408 (Bankr. S.D.N.Y. 2013). So the theoretical conflicts concerns that the court outlined in *Guillot* are dissimilar to what confronted Griffith, who was required in his Chapter 13 case to disclose his potential claim against his bankruptcy counsel in that case. 998 S.W.2d at 633.

[6]We do not know whether Griffith disclosed such a claim.

[7]He argues that

[i]f Griffith had initiated a lawsuit against his bankruptcy counsel while the Chapter 13 was still pending, with Steele representing him, she would almost certainly have withdrawn, because the continuing representation presented her with a conflict between (1) acting in Griffith's interest and ensuring he completed his plan, and (2) acting in her own interests, where her exposure for malpractice could be mitigated by Griffith's

16

an approach, advising that "without re-examining whether the policy reasons behind the tolling rule apply in each legal-malpractice case matching the *Hughes* paradigm, courts should simply apply the *Hughes* tolling rule to the category of legal-malpractice cases encompassed within its definition." *Apex*, 41 S.W.3d at 122. So too, we similarly reject Griffith's suggestion that we decide whether use of the *Hughes* rule is justified for policy reasons. *See J.M.K. 6, Inc. v. Gregg & Gregg, P.C.*, 192 S.W.3d 189, 198 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

Here, once the adversary proceeding reached its final conclusion, resulting in the loss of the ranch, Griffith had exhausted his appeals and had no further legal options against Lone Star in the adversary proceeding or in the overall bankruptcy case. *See Zive*, 644 S.W.3d at 175. As Steele points out, Griffith "offers no explanation of how any ruling in the Chapter 13 bankruptcy [case] could have altered the outcome of the adversary proceeding or the resulting damages." Thus, if Griffith believed that Steele's negligence caused him to lose the ranch—in addition to his affirmative, ongoing obligation to disclose that potential claim against Steele in his bankruptcy case—when the adversary proceeding concluded, he was on the clock to file a legal-malpractice case against Steele.

Because Griffith delayed filing suit until more than two years from the adversary proceeding's final conclusion, he sued too late. We thus conclude that the

---

default on his plan, and dismissal of his case without discharge of his debts.

17

trial court correctly determined that his claims were barred by limitations and properly granted Steele's Rule 91a motion. We overrule Griffith's sole issue.

### III. Conclusion

Having overruled Griffith's sole issue, we affirm the trial court's order granting Steele's Rule 91a motion and dismissing Griffith's claims against Steele with prejudice.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: June 18, 2026