In re Mary Dean JOHNSON, Debtor.

Mary Dean JOHNSON, Plaintiff,

v.

INTERNAL REVENUE SERVICE,
Defendant.

Bankruptcy No. 91–34377–D.
Adversary No. 96–1223.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

June 16, 1997.

William D. Wilson, Jr., Memphis, TN, for Debtor/Plaintiff.

Barbara Morris Zoccola, Asst. U.S. Atty., Memphis, TN, for Defendant.

George W. Stevenson, Memphis, TN, Chapter 13 Trustee.

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND COMPELLING TURNOVER OF TAX REFUND

JENNIE D. LATTA, Bankruptcy Judge.

Before the court is the debtor's Complaint to Compel Turnover of 1995 Tax Refund and

a Motion for Summary Judgment filed by the defendant, the United States of America, on behalf of its agency the Internal Revenue Service ("IRS"). The complaint raises the question of the effect of a dismissal and subsequent reinstatement of a Chapter 13 bankruptcy case upon an intervening interception of an income tax refund where the debtor had no notice of the claim of the IRS, the dismissal of her bankruptcy case, or the intention of the IRS to intercept her refund. For the reasons outlined below, based upon the totality of facts and circumstances presented in this case, the court denies the IRS's motion for summary judgment and orders the IRS to turn over to the debtor her tax refund. This memorandum shall constitute findings of fact and conclusions of law in accordance with FED. R. BANKR. P. 7052. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (E) and (O).

## BACKGROUND FACTS

The parties have submitted this proceeding to the court upon certain stipulated facts. Those stipulated facts are as follows:

1. The parties agree that this Court has jurisdiction pursuant to 28 U.S.C. Section 157(a) and this is a core proceeding.

2. The debtor filed this Chapter 13 bankruptcy on December 23, 1991, and the plan was confirmed on March 3, 1992.

3. The defendant was listed as a priority creditor for tax debt for which the tax year was unspecified in the amount of $1,366.65 in debtor's Schedule E.

4. The Internal Revenue Service filed a timely claim in the amount of $838.63 for the 1988 tax year which was paid in full on June 10, 1995, through payments through the plan trustee.

5. The debtor's case was dismissed on March 4, 1996, for a lack of payment.

6. The debtor's case was reinstated by this Court on June 13, 1996.

7. During the period when the debtor was not in bankruptcy after the case had been dismissed on March 4, 1996, and prior to the reinstatement of June 13, 1996, the Internal Revenue Service intercepted the Debtor's 1995 refund in the amount of $887.84 and applied it to a tax, penalty and interest for the 1987 tax debt, for which the IRS did not file a proof of claim.

Stipulation of Facts, filed June 4, 1997.

In addition to the facts stipulated by the parties, the court notes certain additional facts from the bankruptcy case file[1]. In this Chapter 13 case, the deadline for filing proofs of claim was May 4, 1992. On or about February 2, 1992, the standing Chapter 13 trustee filed a motion to dismiss or convert the debtor's bankruptcy case as the result of receiving an insufficient funds check from the debtor. The motion resulted in the entry of an order on September 14, 1992, conditionally denying the Chapter 13 trustee's motion to dismiss. That order provided that the case could be dismissed without further notice to the debtor upon the first payment missed without satisfactory explanation to the Chapter 13 trustee. The debtor's Chapter 13 case was dismissed by order entered March 12, 1996, upon the authority of the September 14, 1992 order, apparently as the result of a missed payment. The debtor's motion to reinstate her case was filed on April 9, 1996. The debtor's motion recites that she did not receive notice of the dismissal of her bankruptcy case until the week prior to the filing of her motion; that the case had been dismissed without prior notice to her because she had previously been placed on probation; that she had continued to make payments to the Chapter 13 trustee without knowledge of the dismissal; and that she had substantially completed payments due under the plan. The District Director of the Internal Revenue Service, Special Procedures Staff, Nashville, Tennessee 38202, was mailed a notice of the debtor's motion to reinstate her Chapter 13 case on April 17, 1996. No objection to the motion was filed by the IRS. The debtor's motion to reinstate was granted by order entered June 17, 1996. That order does not provide an

---

1. A court may take judicial notice of the bankruptcy case. *O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir.1989); *Wilson v. Huffman (In re Missionary Baptist Foundation of America)*, 712 F.2d 206, 211 (5th Cir.1983).

explanation for the reinstatement, but merely recites that the debtor's motion should be granted. That order is further silent as to its effect upon the prior order of dismissal. The parties have offered no information concerning the specific facts and circumstances surrounding the dismissal and reinstatement. Although the parties have stipulated that the interception of the debtor's tax refund occurred during the interim between dismissal and reinstatement, the precise date of the IRS action is not given.

The Order Confirming Plan, entered March 9, 1992, indicates that the payments under the debtor's Chapter 13 plan should have been completed approximately sixty months after the first payment was due on January 23, 1992; that is, the debtor should have completed her plan payments on approximately January 23, 1997. The court cannot determine from the present record whether all payments have been completed. It does appear that the debtor has not yet received a discharge, however.

The debtor's complaint to compel turnover of her income tax refund was filed on November 1, 1996. The IRS filed its motion for summary judgment on February 27, 1997. The debtor responded by filing a "Memorandum in Support of Complaint to Compel Turnover of 1995 Tax Refund" on April 29, 1997. In the debtor's memorandum, the debtor prays "that her motion be granted and that Defendant be ordered to refund the 1995 overpayment to her." Debtor's Memorandum in Support of Complaint, etc. p. 8. From this and the lawyers' statements to the court that they were submitting the matter to the court upon stipulated facts, the court concludes that the debtor intended her memorandum to be treated as a cross-motion for summary judgment. This conclusion is supported by the "Response to Plaintiff's Memorandum in Support of Complaint to Compel Turnover of 1995 Tax Refund" filed by the IRS on May 13, 1997. In that Response, the IRS "asks that this Court deny the complaint for turnover of the refund as the Internal Revenue Service was within its rights to seize the refund during the dismissal of the case." IRS's Response, etc., p. 5.

## DISCUSSION

FED.RULE BANKR.P. 7056(c), which incorporates FED.R.CIV.P. 56(c), provides in pertinent part:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In order for a fact to be material, it must be one "that might effect the outcome of the suit under the governing law. . . . [M]ateriality is only a criterion for categorizing factual disputes in their relation to the legal elements of a claim and not a criterion for evaluating the evidentiary underpinnings of those disputes." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The debtor seeks turnover of her 1995 income tax refund pursuant to 11 U.S.C. § 542(a) and (b). Those sections provide:

> (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of [title 11], or that the debtor may exempt under section 522 of [title 11], shall deliver to the trustee, and account for, such property, unless such property is of inconsequential value and benefit to the estate.

> (b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section

553 of this title against a claim against the debtor.

▮ The IRS correctly asserts that once this bankruptcy case was dismissed, the debtor and her assets were no longer protected by the automatic stay of 11 U.S.C. § 362(a). The effect of a dismissal is set forth at 11 U.S.C. § 349. Unless the court orders otherwise, the dismissal of a bankruptcy case restores the parties as far as possible to their pre-petition status. "It is as though the bankruptcy case never had been brought." *France v. Lewis & Coulter (In re Lewis & Coulter, Inc.),* 159 B.R. 188, 189 (Bankr.W.D.Pa.1993).

The debtor does not allege that the interception of her refund constituted a violation of the automatic stay, however. Rather the debtor asserts that the interception of her refund was improper because the claim of the IRS had been paid in full through her Chapter 13 plan prior to the dismissal of her bankruptcy case, and thus that the IRS was not entitled to recover anything further.

The IRS responds that it owes no debt that is property of the estate (and thus potentially subject to turnover under Section 542(b)) because it properly applied the 1995 overpayment to the debtor's liability arising out of the 1987 tax year during the period of time when no automatic stay prevented it from doing so.

▮ Both the debtor's argument and the IRS's response turn upon whether or not the IRS held an enforceable claim arising out of the 1987 tax year at the time it intercepted the debtor's 1995 tax refund. The parties' stipulations in this case are inadequate for the court to determine whether the IRS had an enforceable claim or not, and the court will not decide that issue without giving the IRS an opportunity to assert its claim and the debtor an opportunity to respond. The court nevertheless has decided that the IRS should turn over the tax refund to the debtor because it does not appear that the debtor had prior notice of the claim of the IRS, the dismissal of her case, or the IRS's intent to intercept her refund.

The IRS admits that "[t]he majority of cases which have considered the effect of a reinstatement conclude that the reinstatement does not affect the validity of a creditor's actions taken during the period the case was dismissed, *unless there was a violation of due process.*" Memorandum of Authorities filed February 27, 1997 (emphasis mine). A number of cases have discussed the due process requirement in the context of a foreclosure sale of the debtor's residence during a period between dismissal and reinstatement of a Chapter 13 bankruptcy case.

For example, in *In re Acosta,* 181 B.R. 477 (Bankr.D.Ariz.1995), the bankruptcy court set aside a foreclosure sale of the debtors' residence which occurred between the dismissal and subsequent reinstatement of their Chapter 13 case because the debtors were not given actual notice of the continued foreclosure sale. In that case, a foreclosure sale of the debtors' residence was initially scheduled prior to the filing of the debtors' voluntary petition. After the filing of the petition, the foreclosure sale was orally continued from time to time during the pendency of the bankruptcy case, as is permitted by Arizona state law. The debtors' Chapter 13 case was dismissed as the result of the debtors' failure to provide their trustee with proof that their state income tax return had been filed. The debtors subsequently filed the required return, provided proof of filing to their trustee, and filed a motion to reinstate their Chapter 13 case. The foreclosure sale occurred during the interim dismissal period, but while the debtors' motion to reinstate was pending. The secured creditor was the successful bidder. The bankruptcy court held that whether or not a motion to reinstate had been filed, because of the intervening bankruptcy, the secured creditor had a duty to give the debtors actual notice of the rescheduled foreclosure sale even after dismissal of the debtors' petition.

The *Acosta* court relied upon the "essential right under the United States Constitution that before property can be taken and sold by a creditor, due process requirements must be met." *Id.* at 479. The court cited basic due process requirements as established by the Supreme Court:

An elementary and fundamental requirement of due process in any proceeding

which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such a nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance....

*Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).

Similarly, in *Great Pacific Money Markets, Inc. v. Krueger (In re Krueger)*, 88 B.R. 238 (9th Cir.BAP 1988), the bankruptcy appellate panel affirmed the decision of the bankruptcy court voiding a foreclosure sale held after dismissal of a Chapter 13 bankruptcy case where the bankruptcy case was dismissed as the result of the failure of the debtors to appear at a continued confirmation hearing when, despite being directed to do so, counsel for the secured creditor gave neither the debtors nor their counsel notice of the continued hearing. As in *Acosta*, a foreclosure sale of the debtors' residence was initially scheduled prior to the filing of the debtors' voluntary petition, and then orally continued from time to time during the pendency of the bankruptcy case. Upon learning of the dismissal of their case, the debtors obtained an *ex parte* order vacating the order dismissing the bankruptcy case and reinstating the bankruptcy case effective as of the date of dismissal. The bankruptcy judge did not set aside the foreclosure sale *ex parte*, however, but informed the debtors that they would have to bring a separate action to do so. The debtors filed a complaint to set aside the foreclosure sale, which resulted in the entry of an order voiding the sale and reverting the property to the debtors. The bankruptcy judge concluded that 11 U.S.C. § 105(a) gave him the equitable power to unwind the foreclosure sale due to the creditor's bad faith in not notifying the debtors of the continued confirmation hearing and due to the lack of due process. The bankruptcy appellate panel affirmed noting that "an order is void if it is issued by a court in a manner inconsistent with the due process clause of the Fifth Amendment." *Id.* at 240.

Because the order dismissing the bankruptcy case was void, the panel reasoned, "the automatic stay was continuously in effect from the date the petition was filed." *Id.* at 241. Thus the foreclosure sale, which occurred in violation of the automatic stay, was deemed void and without effect. *Id.*

A third case also supports the position that due process requires adequate notice of a creditor's intent to foreclose. In *Tome v. Baer (In re Tome)*, 113 B.R. 626 (Bankr.C.D.Calif.1990), the bankruptcy court held that a foreclosure sale must be set aside where the foreclosing creditors did not give adequate notice of the sale after obtaining relief from the automatic stay.

In other instances, depending on the facts and circumstances of the particular case before it, bankruptcy courts have refused to exercise their equitable powers to unwind a foreclosure sale. For example, in *G.E. Capital Mortgage Services, Inc. v. Thomas (In re Thomas)*, 194 B.R. 641 (Bankr.D.Ariz.1995), the bankruptcy court held that the debtors were not entitled to have their dismissed case reinstated as of the date the debtors filed their motion to reinstate, so as to avoid a trustee's sale. In this case, as in those previously discussed, a foreclosure sale was pending at the time the debtors' bankruptcy petition was filed. In this case, however, the debtors conceded that they had prior notice of the rescheduled sale dates during the pendency of their bankruptcy case. The bankruptcy case was dismissed once because of the debtors' failure to file their mailing matrix, but reinstated one day later. The bankruptcy case was dismissed a second time when the debtors failed to appear for their meeting of creditors. Although the debtors at first claimed that they did not receive notice of the meeting of creditors, based on correspondence from the debtors and their statements at oral argument, the court concluded that they had received notice of the meeting of creditors, but simply miscalendared it. The debtors' case was dismissed on March 13, 1995, and their motion to reinstate was filed on March 28, 1995. The debtors conceded that they knew on March 28th that the foreclosure sale on their residence was scheduled for April 4, 1995. The debtors did

not (i) submit a form of order to reinstate the case, (ii) request an immediate hearing for reinstatement of the case, or (iii) request a temporary restraining order or any other injunctive relief. After the sale was conducted, the debtors sought to avoid the foreclosure sale. Their request was denied. The debtors then filed a motion for reconsideration and the creditor filed a motion for relief from the automatic stay to enable it to complete eviction proceedings. The debtors asked the court either to deem their case reinstated as of March 28, 1995, the date they filed their motion to reinstate, or to deem their case continuously pending since the date it was originally filed. The debtors relied upon *In re Krueger* as authority for the bankruptcy court to exercise its equitable powers in their favor.

The bankruptcy court concluded that unlike in *Krueger*, the debtors in *Thomas* were accorded due process. They knew that their case had been dismissed in advance of a rescheduled foreclosure sale, and they knew the date of the rescheduled foreclosure sale, yet they took no steps to obtain injunctive relief. While the bankruptcy court criticized *Krueger* and *Tome*, and distinguished *Acosta* on its facts, the decision in *Thomas* is nevertheless consistent with those cases in recognizing the fundamental due process requirement of notice before a debtor is deprived of property. *See Thomas,* 194 B.R. at 648. The court notes the limited circumstances under which a bankruptcy court may exercise its equitable power to avoid a foreclosure sale:

> The court certainly has the power to rescind its orders, but the court does not exercise such a power which will avoid a foreclosure sale conducted pursuant to state law, if at all, unless the debtor has shown that he or she was not accorded due process.

*Id.* at 650.

As previously stated, this court has serious concerns about the lack of due process in this case. The IRS has offered no explanation for its failure to timely file a proof of claim for the 1987 tax liability and has offered no proof of the liability itself. The IRS admits that the only claim for which it did timely file

a proof of claim was paid in full by the debtor prior to the dismissal of the bankruptcy case. The IRS asserts that it "was not required to put the 1987 debt in the proof of claim." While technically true, the result of not timely filing a proof of claim in Chapter 13 cases is generally the disallowance of the claim. *See* 11 U.S.C. § 502(b); *Agricredit Corp. v. Harrison (In re Harrison),* 987 F.2d 677, 680 (10th Cir.1993); *Abraham & Straus v. Francis (In re Francis),* 15 B.R. 998, 1003 (Bankr. E.D.N.Y.1981). The IRS further asserts that it could have amended its claim and moved to modify the debtor's plan to provide for payment of the claim arising out of the 1987 tax year. Again, this may be true, but the fact remains that the IRS did *not* move to modify the plan. The court concludes that the debtor had no prior notice of any additional claim asserted by the IRS.

In addition, the debtor did not receive timely notice of the dismissal of her case. The debtor was given notice in September of 1992 that her case could be dismissed without further notice upon the first payment missed *"without satisfactory explanation to the trustee."* (emphasis mine). The debtor's case was dismissed on March 12, 1996, three and one-half years later. It does not appear from the record before me whether the debtor was given any opportunity to provide a "satisfactory explanation" for nonpayment to the trustee prior to the dismissal of her case. It does not appear that a notice of default was given to the debtor. The debtor asserts that she continued to make payments to the Chapter 13 trustee for some period after the dismissal of her case because she had not received notice.

The Supreme Court has said that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. at 314, 70 S.Ct. at 657. The IRS has failed to demonstrate that the debtor received adequate notice of its claim or of the dismissal of her case. Unlike the facts in *Thomas,* the debtor in this case did not fail to take action in the face of a known impending action by the IRS.

Based upon the particular facts and circumstances of this case, the IRS will be directed to turn over to the debtor her 1995 tax refund together with overpayment interest as defined at 26 U.S.C. § 6621. The court does not here decide the effect of reinstatement of a bankruptcy case in all instances. Absent the strong equitable considerations and lack of due process in this case, the court agrees with the decision in *Thomas* that a debtor cannot simply sit back while a creditor exercises its remedies after the dismissal of her bankruptcy case. In those cases in which the debtor has prior notice of the dismissal of her case and of the potential for one or more of her creditors to exercise their right to foreclose and/or repossess the debtor's property, the court will not intervene if the bankruptcy case is later reinstated. The debtor must act promptly by seeking an emergency hearing or temporary restraining order if needed. Further, the court does not here decide whether, as a result of the turnover, the debtor owes any obligation to the IRS arising out of the 1987 tax year. That issue is not properly before the court and was not anticipated or briefed by the parties. By exercising its equitable power to order the payment of the 1995 refund, the court returns the parties to their pre-offset position. In the event the IRS takes steps to assert a claim arising out of the 1987 tax year in this bankruptcy case, the debtor will have the opportunity to respond as appropriate.

From all of the foregoing,

IT IS ORDERED that the IRS's motion for summary judgment is denied; and

IT IS FURTHER ORDERED that the IRS pay to the debtor $887.84 together with overpayment interest, as defined at 26 U.S.C. § 6621, from the date of its interception of the debtor's refund until the date of payment.