**Vito LOMAGNO and Marie Midolo, Debtors.**

**Vito Lomagno and Marie Midolo, Plaintiffs/Appellants,**

**v.**

**Salomon Brothers Realty Corp., Defendant/Appellee.**

BAP No. MW 04–041.
Bankruptcy No. 03–40276–JBR.
Adversary No. 04–4312.

United States Bankruptcy Appellate Panel of the First Circuit.

Feb. 9, 2005.

David G. Baker, Charlestown, MA, on brief for Appellants.

David P. Russman, Springfield, MA, on brief for Appellee.

Before DE JESÚS, VAUGHN and CARLO, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

The debtors, Vito Lomagno and Marie Midolo (the "Debtors"), appeal from the bankruptcy court's August 3, 2004 order denying their motion for judgment on the pleadings and granting the defendant's cross-motion for judgment on the pleadings with respect to the Debtors' adversary complaint seeking injunctive and declaratory relief relating to the sale of certain real property. At issue in this case is whether the Panel's reversal of the bankruptcy court's order dismissing the Debtors' bankruptcy case caused the automatic stay to be reinstated retroactively, as if the dismissal never occurred, so that a foreclosure sale which took place after the dismissal, is void and without effect. For the reasons set forth below, we affirm.

### BACKGROUND

The Debtors are married and live in Lawrence, Massachusetts. In 1990, they purchased a house on Tower Hill Street in Lawrence, MA, and executed a note and mortgage in favor of University Bank. N.A. The note and mortgage were ultimately assigned to Salomon Brothers Realty Corp. ("Salomon") in 1996. In 1999, the Debtors moved out of the house and rented it to tenants. Problems arose, and when they attempted to evict the tenants, the tenants complained to the local housing authority about housing code violations. The city began proceedings against the Debtors, and eventually a receiver was appointed.

The Debtors fell into arrears on their mortgage, and Salomon began foreclosure proceedings. The Debtors filed a homestead exemption and filed a Chapter 7 proceeding on July 31, 2001, eventually receiving a discharge on November 6, 2001. Salomon resumed foreclosure proceedings, and the Debtors filed a Chapter 13 proceeding *pro se* on July 31, 2002. When the Debtors were unable to provide proof of insurance on the property, the trustee filed a motion to dismiss the case, which was granted by the bankruptcy court on October 24, 2002. The Debtors obtained proof of insurance from the Receiver and mortgagee and requested reconsideration, which was denied by the bankruptcy court.

A few months later, Salomon recommenced foreclosure proceedings, and the Debtors filed the present Chapter 13 bankruptcy proceeding on January 16, 2003. The Receiver filed a motion to dismiss, which was joined by the City of Lawrence on January 23, 2003. The bankruptcy court held a hearing on the motion to dismiss on January 29, 2003, and denied the Receiver's request. The Receiver then filed an objection to the Debtors' plan and an objection to the Debtors' claim of exemption, arguing that the Debtors did not reside at the property over which they claimed a homestead exemption. The City of Lawrence moved to join the Receiver's objections. The bankruptcy court issued a notice of a hearing to be held on March 5, 2003, to consider the Receiver's objection to the Debtors' claim of exemption, the

Receiver's objection to confirmation of plan, and the Debtors' motion to avoid the Receiver's judicial lien, as well as the Debtors' motion to strike the City of Lawrence's objection thereto.

The bankruptcy court held the hearing on March 5, 2003, and took the matter under advisement. On March 10, 2003, the bankruptcy court entered an opinion wherein it dismissed the Debtors' Chapter 13 case, based upon its findings that the Debtors' plan (1) misrepresented the amount of mortgage arrears; (2) incorrectly averred that certain student loans were discharged in their first bankruptcy case; (3) did not provide for the Receiver's expenses; (4) was not feasible; and (5) proposed a $30,000 balloon payment, despite no reasonable likelihood of refinancing to make such a payment. The Debtors appealed to the Bankruptcy Appellate Panel (BAP No. MW 03–023). Their motions to stay the order of dismissal were denied by the bankruptcy court and by the Panel. The Debtors did not seek review of these decisions in the First Circuit Court of Appeals.

While the dismissal was on appeal, the Receiver brought suit against the Debtors and Salomon in the Essex Superior Court to enforce his lien, which he claimed was superior to all other encumbrances on the property. Moreover, while the dismissal was on appeal, Salomon was scheduled to foreclose on its mortgage on May 29, 2003. The Debtors filed a Motion for Temporary and Permanent Injunctive Relief in the Essex Superior Court action in an effort to thwart the foreclosure sale. After a hearing on May 29, 2003, the motion was denied and the foreclosure sale went forward. At the foreclosure auction, Salomon was the highest bidder and purchased the property. Thereafter, in September 2003, the Debtors tried to prevent further sale of the property by filing another Motion for a Temporary Restraining Order in the Essex Superior Court action. After a hearing, the court denied the motion on or about September 25, 2003.

On March 11, 2004, the Panel issued its decision reversing the bankruptcy court's dismissal of the bankruptcy case, finding that the bankruptcy court erred in raising issues as to the Debtors' good faith and the feasibility of their plan of reorganization *sua sponte* and dismissing the case without notice and a hearing. Shortly thereafter, on March 18, 2004, the Debtors filed an adversary complaint in the bankruptcy court seeking injunctive and declaratory relief, arguing that the Panel's reversal of the dismissal order reinstated the automatic stay as if the dismissal had never taken place and, therefore, the foreclosure sale was void and Salomon should be enjoined from further conveying the property. The bankruptcy court denied initial motions for a temporary restraining order to prevent further conveyance of the property. Salomon filed a motion to dismiss the complaint and for sanctions. In response, the Debtors filed an objection to the motion to dismiss and a motion for judgment on the pleadings. Salomon filed a cross-motion for judgment on the pleadings, and subsequently withdrew its motion to dismiss the complaint.[1]

The bankruptcy court held a hearing on August 3, 2004. After hearing from the parties, the bankruptcy court concluded:

I am denying the plaintiffs' motion for judgment on the pleadings, sustaining the defendant's objection, and granting defendant's cross-motion for judgment on the pleadings. I believe that the First Circuit law is, as stated by Mr. Russman, it makes absolutely no sense to me that the result that Mr. Baker is

---

1. In June of 2004, the property was sold by Salomon to a third party.

suggesting is the law. I think the case law is pretty clear that when the case is dismissed, the stay is terminated; and if the stay is reinstated, it was not retroactive, and every action that was done not in violation of the stay that didn't exist at the time would therefore be null and void. It would be chaotic with respect to the certainty of titles, and I don't think that there's anything in the Code or in the BAP decision or in the First Circuit law that compels such a result. . . .

Transcript dated 8/3/04 at 12. The Debtors appealed.

## JURISDICTION

■■■■ A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An interlocutory order " 'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998). Generally, a judgment on the pleadings is a final appealable order. *See generally Potthoff v. Morin*, 245 F.3d 710 (8th Cir.2001).

## STANDARD OF REVIEW

■■■■ Appellate courts reviewing an appeal from the bankruptcy court generally apply the "clearly erroneous" standard to findings of fact and *de novo* review to conclusions of law. *See TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20, n. 8 (1st Cir. 1994). The bankruptcy court's conclusion that granting judgment on the pleadings was appropriate is a conclusion of law and thus, is reviewed *de novo*. *See Potthoff*, 245 F.3d at 715 ("A judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is reviewed *de novo*"); *George v. Pacific–CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir.1996) (same).

## DISCUSSION

### I. Standard for Motion for Judgment on the Pleadings.

A motion for judgment on the pleadings is governed by Fed.R.Civ.P. 12(c) ("Rule 12(c)"), which is made applicable in bankruptcy proceedings pursuant to Fed. R. Bankr.P. 7012. In reviewing a motion for a judgment on the pleadings, the court accepts as true all material facts pleaded by the non-moving party, and grants reasonable inferences from the pleadings in favor of the non-moving party. *See de Castro v. Morales Medina*, 943 F.2d 129, 130 (1st Cir.1991). Like a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court grants a motion for a judgment on the pleadings only when the moving party clearly establishes that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 12(c); Fed. R. Bankr.P. 7012(c); *de Castro*, 943 F.2d at 130; *see also National Car Rental Sys., Inc. v. Computer Assocs. Int'l Inc.*, 991 F.2d 426, 428 (8th Cir.1993).

## II. The Effect of Dismissal on the Estate and the Automatic Stay.

■ Under § 541 of the Bankruptcy Code, the commencement of a bankruptcy case creates an estate that comprises all legal and equitable interests of the debtor in property as of the date the bankruptcy case is commenced. *See* 11 U.S.C. § 541(a). Moreover, subject to limited exceptions, the filing of a petition for relief automatically stays all acts against a debtor and property of the estate. *See* 11 U.S.C. § 362(a). However, § 362(c)(2)(B) states unambiguously that the automatic stay terminates when "the case is dismissed." 11 U.S.C. § 362(c)(2)(B); *see also Fish Market Nominee Corp. v. Pelofsky,* 72 F.3d 4, 6 (1st Cir.1995). Although the Bankruptcy Code is not specific as to when the bankruptcy estate terminates, the First Circuit has held that dismissal of the bankruptcy petition immediately terminates both the automatic stay and the bankruptcy estate. *See In re de Jesús Saez,* 721 F.2d 848, 851 (1st Cir.1983);[2] *see also Commonwealth of Massachusetts v. Pappalardo (In re Steenstra),* 307 B.R. 732, 738 (1st Cir. BAP 2004). The First Circuit explained that:

> an automatic stay must plainly terminate upon dismissal of the petition giving rise to it. Section 362(c) provides that the stay continue as to creditor conduct not directed against property of the estate, only until dismissal, and as to conduct directed against such property, only so long as it remains in the estate. It seems self evident that there is no 'estate' and hence no 'property of the estate' unless there is an existing petition. Dismissal of the petition, there-

fore, would ordinarily terminate the stay as well.

*In re de Jesús Saez,* 721 F.2d at 851.

Such immediate termination of the automatic stay is supported by § 349(b)(3), which provides that the dismissal of a case revests the property of the estate in the entity in which the property was vested immediately before the commencement of the case. *See* 11 U.S.C. § 349(b)(3); *see also de Jesús Saez,* 721 F.2d at 851. The legislative history shows that Congress intended that this provision "undo the bankruptcy case, as far as practicable, and restore all property rights to the position in which they were found at the commencement of the case." H.R.Rep. No. 95–595, at 338 (1977); S.Rep. No. 95–989, at 48–49 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835, 6294. "Insofar as continuation of the stay prevents a secured creditor from exercising his security interest, it plainly impairs the property interests he had before the filing of the debtor's petition." *de Jesús Saez,* 721 F.2d at 851. "Termination of the automatic stay at the moment a dismissal order is entered is the quickest and most effective means of restoring debtors and creditors to their status quo positions prior to the case in bankruptcy." *Shaw v. Ehrlich,* 294 B.R. 260 (W.D.Va.2003).

## III. The Effect of Reinstatement of a Dismissed Case and the Automatic Stay.

■ In this case, the bankruptcy court concluded that Salomon was entitled to judgment on the pleadings since the automatic stay terminated upon dismissal of the bankruptcy case, and, accordingly, the subsequent foreclosure sale was not conducted in violation of the automatic stay.

---

**2.** This proposition is supported by § 362(c)(1), which provides that "the stay of an act against property of the estate ... con-

tinues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1); *see also de Jesús Saez,* 721 F.2d at 851.

The Debtors argue that the reinstatement of their dismissed bankruptcy case retroactively restored the automatic stay as if the dismissal had not occurred and, therefore, the bankruptcy court was required, as a matter of law, to set aside the foreclosure sale as null and void.

## A. The general rule

Courts deciding the issue have generally held that the reinstatement of a dismissed bankruptcy case does not retroactively reimpose the automatic stay. *See, e.g., de Jesús Saez*, 721 F.2d at 851–52 (holding that dismissal of bankruptcy case lifted automatic stay and permitted foreclosure sale even where dismissal was later reconsidered); *Lashley v. First Nat'l Bank of Live Oak (In re Lashley)*, 825 F.2d 362 (11th Cir.1987); *Weston v. Rodriguez (In re Weston)*, 110 B.R. 452 (E.D.Cal.1989), *aff'd*, 967 F.2d 596 (9th Cir.1992) (holding that foreclosure sale after dismissal was not violation of automatic stay even where dismissal was reversed on appeal and bankruptcy reinstated); *In re Shaw*, 16 B.R. 875 (9th Cir. BAP 1982) (when bankruptcy court entered order of dismissal, automatic stay was immediately terminated); *G.E. Capital Mortg. Servs. v. Thomas (In re Thomas)*, 194 B.R. 641 (Bankr. D.Ariz.1995). Salomon relies on the holdings of *de Jesús Saez* and *Weston* to support its position.

In *de Jesús Saez*, the bankruptcy court dismissed the debtor's Chapter 13 case for failure to prosecute the bankruptcy. The debtor moved for reconsideration of the dismissal order, but failed to serve the motion upon the mortgagee's attorney. In the meantime, a mortgagee sold the debtor's residence at a foreclosure auction to a third party. After a hearing, the bankruptcy court granted the motion to reconsider, and found that the foreclosure sale violated the automatic stay. In so holding,

the bankruptcy court concluded that the automatic stay continued for 10 days after the order dismissing the case was entered and since the foreclosure took place during that 10–day period, it violated the automatic stay. The mortgagee appealed and the district court affirmed. The First Circuit reversed, concluding that the automatic stay unequivocally terminated upon the dismissal of the petition giving rise to the stay and the "10 day rule" did not apply.

In *Weston,* the bankruptcy court entered an order dismissing the debtor's Chapter 11 case. Although the debtor moved for reconsideration, he did not obtain a stay of the dismissal order. The motion for reconsideration was subsequently denied, and the debtor appealed the dismissal order. In the meantime, the creditors proceeded with foreclosure sales in state court pursuant to the dismissal order. The Panel ultimately reversed the dismissal and the bankruptcy case was reinstated. The bankruptcy court held that the foreclosure sale was not in violation of the automatic stay. On appeal, the district court upheld the bankruptcy court's decision, concluding that the automatic stay terminated upon dismissal of the bankruptcy case, and the subsequent foreclosure sale by the creditors was not in violation of the automatic stay.

Other appellate courts have reached similar conclusions. *See, e.g., Nicholson v. Nagel (In re Nagel)*, 245 B.R. 657 (D.Ariz. 1999). In *Nagel,* the District Court for the District of Arizona reversed the bankruptcy court's retroactive reinstatement of the automatic stay, holding as follows:

A review of the case law reveals no basis in law for the proposition that the automatic stay continues after dismissal of a case. A retroactive reinstatement of the automatic stay is not consonant with this conclusion. Indeed, the bankruptcy court's retroactive reinstatement of the

"automatic stay" is squarely at odds with the plain reading of § 362(c)(2) and Congress' intent that the parties be returned to the status quo ante. By "undoing" the return to the status quo ante through the retroactive application of the stay, the bankruptcy court engaged in a kind of "judicial time travel that cannot be reconciled with the law."

*Nagel,* 245 B.R. at 662.

## B. The "due process" exception

An exception to the general rule is emerging from the case law. Several courts have concluded that reinstatement of a dismissed bankruptcy case does not affect the validity of a creditor's actions taken during the period the case was dismissed, *unless there was a violation of due process rights. See, e.g., Great Pacific Money Markets, Inc. v. Krueger (In re Krueger),* 88 B.R. 238 (9th Cir. BAP 1988); *In re Johnson,* 210 B.R. 134, 137 (Bankr. W.D.Tenn.1997); *In re Acosta,* 181 B.R. 477 (Bankr.D.Ariz.1995) (setting aside foreclosure sale of debtor's property during period between dismissal and reinstatement of bankruptcy case because debtors were not given actual notice of continued foreclosure sale).

In *Krueger,* the debtor filed amendments to the bankruptcy plan but was not present at the confirmation hearing. Since the trustee did not notify the debtor that he would object to the amendments, the bankruptcy court continued the hearing and instructed the creditor to notify the debtors of the continuance. The creditor failed to notify the debtors or their counsel of the continued confirmation hearing, and the case was dismissed on the trustee's motion for failure to amend the plan as requested. Soon after the dismissal, the creditor held a foreclosure sale of the debtors' residence.

Upon learning of the dismissal of their case, the debtors obtained an ex parte order vacating the order dismissing the bankruptcy case and reinstating the bankruptcy case effective as of the date of dismissal. The debtors then filed a complaint to set aside the foreclosure sale, which resulted in the entry of an order voiding the sale and reverting the property to the debtors. The bankruptcy court concluded that it had equitable power under § 105(a) to unwind the foreclosure sale due to the creditor's bad faith in failing to notify the debtors of the continued confirmation hearing and due to the lack of due process. The bankruptcy appellate panel affirmed, noting that "an order is void if it is issued by a court in a manner inconsistent with the due process clause of the Fifth Amendment." *Id.* at 240. The panel reasoned that because the order dismissing the bankruptcy case was void, "the automatic stay was continuously in effect from the date the petition was filed." *Id.* at 241. Thus, the foreclosure sale, which occurred in violation of the automatic stay, was deemed void and without effect. *Id.*

The Debtors rely on the *Krueger* decision, arguing that other cases (particularly *de Jesús Saez* and *Weston*) are distinguishable because they did not involve a violation of due process rights. Cases discussing the issue note the *Krueger* distinction. *See Weston,* 110 B.R. at 457 n. 3 (declining to follow *Krueger* because the orders in *Weston* were set aside on grounds other than a failure to accord due process); *Thomas,* 194 B.R. at 650 (noting that bankruptcy courts do not have the power to set aside foreclosure sales conducted pursuant to state law, unless the debtor has shown that he was not accorded due process).

## IV. The Present Case.

The question of whether the automatic stay is retroactively imposed when a dis-

missal order is set aside on due process grounds is a matter of first impression in the First Circuit. The First Circuit has concluded, without considering a due process exception, that the reinstatement of a dismissed bankruptcy case does not retroactively reimpose the automatic stay. *de Jesús Saez,* 721 F.2d at 851–52. This result is compelling in any context since the due process exception is at odds with a plain reading of § 362(c)(2), providing for the termination of the automatic stay upon dismissal, and Congress' intent that the parties be returned to the status quo. As stated by the First Circuit, "[i]nsofar as continuation of the stay prevents a secured creditor from exercising his security interest, it plainly impairs the property interests he had before the filing of the debtor's petition." *de Jesús Saez,* 721 F.2d at 851.

■ In an analogous situation, since reopening a case does not "undo" any of the statutory consequences of the closing of a case, the automatic stay is not retroactively reinstated upon a case being reopened. *See Menk v. LaPaglia (In re Menk),* 241 B.R. 896 (9th Cir. BAP 1999). This is because § 362 grants prospective relief. "The automatic stay simply prohibits further acts. It does not invalidate acts already taken." *In re Concord Mill Ltd. P'ship,* 136 B.R. 896, 902 (Bankr.D.Mass. 1992).

Furthermore, we conclude that the due process exception, if it were to be applied in the First Circuit, should not be applied to the facts of this case. First, the due process exception set forth in *Krueger, Johnson* and *Acosta* is distinguishable from what occurred in this case. In *Krueger,* the foreclosing creditor failed to provide the debtors with notice of the hearing wherein the court dismissed their petition and failed to give notice of the foreclosure sale. In *Johnson,* the debtor did not receive adequate notice of an In-

ternal Revenue Service tax claim, of the dismissal of her bankruptcy case or of the intent of the Internal Revenue Service to intercept her tax refund. In *Acosta,* the debtors were not given actual notice of the foreclosure sale.

In the present case, the nature of the due process violation is distinct. Salomon was not the perpetrator of the violation. There are no allegations of bad faith on Salomon's part, either in failing to provide notice to the Debtors or in conducting the foreclosure sale. Further, the Debtors were represented at the hearing that resulted in the dismissal and they made some efforts to stay the foreclosure. Thus, while the dismissal itself was entered without notice to the Debtors that the bankruptcy court was considering dismissal, the Debtors received notice of the dismissal and of the foreclosure. The Debtors were also heard with respect to their motions to stay the dismissal pending appeal and their requests for an injunction prohibiting the sale and resale in state court. Unlike what occurred in *Krueger, Johnson* and *Acosta,* the Debtors in the present case were aware of the dismissal and the foreclosure in time to protect their rights.

■ This case reflects the importance of a basic rule in bankruptcy, that to maintain the status quo during the pendency of an appeal, a party must obtain a stay pending appeal. The Federal Rules of Bankruptcy Procedure authorize stays pending appeal. Fed. R. Bankr.P. 8005. "A party who desires to appeal is not obliged to seek a stay of the judgment pending appeal. However, if no stay is in effect, the prevailing party may treat the judgment of the bankruptcy court as final, notwithstanding that an appeal is pending." 10 *Lawrence P. King, Collier on Bankruptcy* ¶ 8005.01 (15th ed. rev.). It is well settled that sales authorized in bank-

ruptcy pursuant to § 363(f), may not be reversed on appeal unless the aggrieved party obtains a stay of the sale pending appeal. *See Canzano v. Ragosa (In re Colarusso)*, 382 F.3d 51, 61–62 (1st Cir. 2004). Likewise, parties must obtain a stay pending appeal of an order confirming a Chapter 11 plan or risk a determination that the appeal is moot after implementation of the plan. *See, e.g., In re Public Serv. Co. of New Hampshire*, 963 F.2d 469 (1st Cir.1992). In *Public Service Co.*, the appellants sought a stay pending appeal in both the bankruptcy court and in the district court. Both requests were denied and the appellants sought no further review. The First Circuit concluded that the appellants should have sought appellate or mandamus relief from the court of appeals. *Id.* at 472. The failure to pursue available remedies and obtain the stay made the appeal moot because the parties implemented the confirmed plan.

In the present case, the debtors did not obtain a stay-related writ of mandamus from the court of appeals, nor did they file an interlocutory appeal in their attempt to obtain a stay pending appeal. Their failure to obtain the stay allowed Salomon to foreclose upon the property and subsequently transfer the property to a third party.[3] At this juncture it would be inequitable to make the automatic stay retroactive. After the dismissal, the Debtors sought stays at the federal level and injunctions at the state level. When these requests were denied, Salomon had every reason to believe that it was free to complete the foreclosure and subsequently transfer the property to a third party.

The practical effect of a determination that the stay has retroactive effect would be that a secured creditor is not at liberty to foreclose after the dismissal of a bankruptcy petition, if an appeal is taken which alleges a due process violation in the dismissal. The creditor would have to wait until the appeal is resolved, irrespective of whether it is receiving payments, since the creditor would be unable to obtain relief from an automatic stay in a dismissed case. This, likewise, could have repercussions in other areas of bankruptcy law, such as in appeals of confirmation orders and in appeals of orders granting relief from the automatic stay.

### CONCLUSION

We conclude that when the bankruptcy court entered its order of dismissal on March 10, 2003, the automatic stay was immediately terminated, irrespective of the Debtors' right of appeal. Salomon's foreclosure did not violate the automatic stay because the stay was not in effect at the time the foreclosure took place. We decline to give retroactive effect to the automatic stay. Because the Debtors failed to obtain a stay pending appeal, pursuant to Fed. R. Bankr.P. 8005, Salomon was entitled to enforce its rights as a creditor. Accordingly, the judgment of the bankruptcy court is **AFFIRMED**.

---

**3.** We do not have sufficient information to make a determination as to whether the third-party transferee was a good faith purchaser.