Prior Vote: Assembly Banking & Finance Committee 11–0; Assembly Floor 63–16

**IN RE Kara Lynn MURPHY, Debtor.**

**Bankruptcy Case No. 11–13280 EEB**

United States Bankruptcy Court, D. Colorado

June 7, 2013

Keith Moskowitz, 3000 Pearl St., Ste. 206, Boulder, CO 80301, for Debtor.

Chapter 13

**ORDER GRANTING RELIEF FROM STAY, DENYING DEBTOR'S REQUEST TO VOID SHERIFF'S SALE, AND VACATING PRIOR CONFIRMATION ORDER**

Elizabeth E. Brown, Bankruptcy Judge

THIS MATTER comes before the Court on the Debtor's request to void a sheriff's sale of her home that occurred after this case had been dismissed for non-payment of her plan obligations and before its rein-

statement. Also before the Court is a related motion by the previously foreclosing creditor and now owner, Country Club Greens Condominiums Association ("Creditor"), seeking relief from the automatic stay to evict the Debtor from the home.[1] For the reasons set forth below, this Court FINDS and CONCLUDES that the sheriff's sale should not be set aside and relief from stay should be granted.

## I. BACKGROUND

On October 8, 2010, the Creditor obtained a decree of judicial foreclosure in state court to conduct a sheriff's sale of the Debtor's home based on her failure to pay homeowners' association dues. The Debtor filed a chapter 7 petition on February 22, 2011, but later converted her case to a chapter 13 proceeding. She confirmed a plan providing for both the cure of prepetition HOA dues and the continued payment of postpetition dues.

On December 19, 2011, the Court dismissed her chapter 13 case for failure to make plan payments. Ten days later, the Debtor filed a motion to reinstate her case, but she served it on her creditors with a notice giving them a period of time in which to object. In the meantime, she did not seek a stay of the dismissal order, nor a request for an expedited hearing on her motion. While her motion was pending, the sheriff's sale went forward, resulting in the issuance of a certificate of purchase to the Creditor. Two days later, the Court granted the Debtor's motion to reinstate because no party in interest, including the Creditor, had objected. Approximately seven weeks after the reinstatement, the Creditor posted an eviction notice, which

---

**1.** The Creditor consented to a continuation of the stay to afford the parties an opportunity to brief the issues.

prompted the Debtor to file her motion to void the sale.

## II. DISCUSSION

■■■■ Both parties have acknowledged that there was no stay in effect to impede the sheriff's sale of the Debtor's home following the dismissal of the case. An order of dismissal is immediately effective because the usual fourteen-day stay of execution provided by Fed.R.Civ.P. 62 is not applicable. *See Martir Lugo v. De Jesus Saez (In re De Jesus Saez)*, 721 F.2d 848, 851–52 (1st Cir.1983). Moreover, with dismissal, the automatic stay terminates immediately pursuant to 11 U.S.C. § 3 62(c)(2)(B).[2] *See Kline v. Deutsche Bank Nat'l Trust Co. (In re Kline)*, 472 B.R. 98, 103 (10th Cir. BAP 2012), *aff'd*, 2013 WL 1668342 (10th Cir. April 18, 2013).

What is less clear is the legal effect of the reinstatement of this case. With reinstatement, did the automatic stay go back into effect? Does it apply retroactively to invalidate enforcement actions that have occurred during the gap between dismissal and reinstatement, such as the sheriff's sale here? Does the Debtor's pre-dismissal confirmed plan in this case, which allows her to retain her home and cure the Creditor's arrears, still bind the Creditor, even though the intervening act of foreclosure and sale of the home occurred during the gap period? These questions arise because, although "reinstatement" of chapter 13 cases is a common practice, there is no provision in the Bankruptcy Code or Rules for reinstatement of a dismissed case.

■■■■ "Reinstatement" is a judicially created fiction, designed to spare debtors the burden of filing a new case. Quite often, chapter 13 cases are dismissed due to a couple of missed plan payments. In this district, debtors are warned of the impending dismissal, but somehow the warning does not get their attention. It is only after dismissal that they make frantic efforts to cure the deficiencies and seek reinstatement, with a sincere intent to remain current going forward. If the court did not permit reinstatement and a debtor had to file a new case, he would have to prepare new schedules and pay another filing fee. If the debtor files a new case within one year of the dismissal, the Bankruptcy Code treats the debtor as a "repeat filer" and limits the duration of the automatic stay to only thirty days. 11 U.S.C. § 362(c)(3). Moreover, the debtor would have to file a new plan. Even if the debtor was in the fourth year of a five-year plan at the time of dismissal, he would have to begin a new five-year plan with the filing of a new case. To ameliorate these harsh results, courts have created the fiction of "reinstatement" to achieve a just and practical result. Sometimes, however, it is difficult if not impossible, to unscramble the egg if creditors have taken enforcement actions during the gap period.

### A. Reinstatement and the Automatic Stay

Just as there is no basis in the Code for reinstatement of a case, there is also no provision for reinstatement of the automatic stay. In keeping with the practical, results-oriented approach to reinstatement of the case, however, courts have extended their meddling to "re-impose" the automatic stay. They sometimes attempt to justify this practice by analogizing a reinstatement request to a motion for relief from judgment under Fed.R.Civ.P. 60(b). *See Diviney v. Nations Bank of Tex. (In*

---

**2.** Unless otherwise indicated, references to "§" or "Section" shall mean the Bankruptcy Code, Title 11 of the United States Code, and references to "Rule" shall mean the Federal Rules of Bankruptcy Procedure.

*re Diviney),* 211 B.R. 951, 962 (Bankr. N.D.Okla.1997), *aff'd,* 225 B.R. 762 (10th Cir. BAP 1998); *Geberegeorgis v. Gammarino (In re Geberegeorgis),* 310 B.R. 61, 70 (6th Cir. BAP 2004). Since the granting of a Rule 60(b) motion vacates the prior order, these courts reason that reinstatement returns the parties to the status quo that existed prior to dismissal, including a re-imposition of the automatic stay. *See Murrell v. Vega,* 2000 WL 425012, *2 (9th Cir. April 19, 2000); *In re Searcy,* 313 B.R. 439, 443 (Bankr.W.D.Ark.2004).

Given the vacatur of the dismissal order, it would be logical to assume that the automatic stay is re-imposed retroactively, but courts have uniformly held that it is not. *Lashley v. First Nat'l Bank of Live Oak,* 825 F.2d 362, 364 (11th Cir.1987); *Shaw v. Ehrlich,* 294 B.R. 260, 275 (W.D.Va.2003), *aff'd,* 99 Fed.Appx. 466 (4th Cir.2004); *Nicholson v. Nagel (In re Nagel),* 245 B.R. 657, 662 (D.Ariz.1999); *In re Hill,* 305 B.R. 100, 105–08 (Bankr.M.D.Fla. 2003) (collecting cases). When one bankruptcy court attempted to impose the stay retroactively, the district court accused it of "engag[ing] in a kind of judicial time travel that cannot be reconciled with the law." *Nicholson,* 245 B.R. at 662. This refusal to make the stay retroactive stems from an unwillingness to invalidate legally permissible actions creditors may have taken during the gap to enforce their rights. Thus, courts have created this hybrid legal fiction of reinstatement of the stay prospectively, but not retroactively, in order to balance the rights of both the debtor and the creditors.

Provisions of § 362 indirectly support this judicial interpretation. Section 362(d), which governs requests for relief from the automatic stay, provides a court with several options as to the form of relief it may grant, including "terminating, *annulling,* modifying, or conditioning" the stay. 11 U.S.C. § 362(d) (emphasis added). By allowing annulment, Congress has given bankruptcy courts the power to retroactively hold that the stay never went into effect. Contrast this provision with § 362(c)(4). To curb abuse by repeat filers, the latter prescribes that the automatic stay does not take effect when a petition is filed if the debtor has filed two or more prior bankruptcy cases within the previous year, unless a party in interest demonstrates that the filing of the new case is "in good faith." 11 U.S.C. § 362(c)(4)(B). In those instances in which the debtor or another party convinces the court that the new case represents a good faith filing, Congress nevertheless only allows the stay to be imposed prospectively, and not retroactively. It states that "a stay imposed under [this section] shall be effective on the date of the entry of the order allowing the stay to go into effect." 11 U.S.C. § 362(c)(4)(C). Read together, these two subsections demonstrate that you can wipe out the stay retroactively, but you cannot impose it retroactively. No doubt this reflects Congress' shared reluctance to upset any actions taken by creditors while the stay was not in effect.

■■ Since the automatic stay is not re-imposed retroactively, it behooves a debtor who does not wish to lose assets to seek expedited reconsideration of the dismissal, a stay pending appeal, or other injunctive relief. *See, e.g., Lomagno v. Salomon Bros. Realty Corp. (In re Lomagno),* 320 B.R. 473, 481–82 (1st Cir. BAP2005), *aff'd,* 429 F.3d 16 (1st Cir.2005); *In re Searcy,* 313 B.R. 439, 443 (Bankr. W.D.Ark.2004); *In re Rivera,* 280 B.R. 699, 701 (Bankr.S.D.Ala.2001). Since the Debtor here did not seek any of these forms of relief, the re-imposition of the automatic stay in this case did not void the sheriff's sale retroactively.

## B. Reinstatement and the Confirmed Plan

Next, the Debtor has argued that, even if the automatic stay is not re-imposed retroactively, the Creditor nevertheless remains bound by the prior confirmed plan, which allowed the Debtor to retain possession of the home and to cure the arrearages over the life of the plan. According to the Debtor, upon reinstatement, the confirmation order trumps the intervening sale of the home. This argument appears to raise an issue of first impression within the Tenth Circuit.

Outside of this jurisdiction, courts have ruled on this issue primarily without analysis or in dictum. In *Nash v. Kester*, 765 F.2d 1410, 1413 (9th Cir.1985), the Ninth Circuit stated without analysis that "dismissal effectively vacated the ... confirmed plan." In *Wells Fargo Bank, N.A. v. Oparaji (In re Oparaji)*, 698 F.3d 231 (5th Cir.2012), the Fifth Circuit was asked to determine whether a creditor was bound by its prior assertion in a dismissed chapter 13 case, which had been embodied in the debtor's plan, as to the amount of its mortgage arrears for a certain period of time. When the creditor asserted a much higher amount of arrearages for the same time period in the debtor's second chapter 13 case, the debtor filed an adversary proceeding to challenge the amount on the basis of judicial estoppel. In ruling that judicial estoppel did not apply, the court noted:

> Debtor's arguments ... fail to appreciate the nature of a Chapter 13 plan as an "exchanged for bargain between the debtor and the debtor's creditors[.]" As such, "when a debtor fails to fulfill their [sic] end of the bargain because of the dismissal of their case, a resulting finding that their confirmed Chapter 13 plan is terminated serves to prevent a debtor from obtaining the benefit of those terms in a plan which are [sic] advantageous to the debtor."

*Id.* at 238 (quoting *In re Hufford*, 460 B.R. 172, 177 (Bankr.N.D.Ohio 2011)); *see also, Hutchinson v. Delaware Sav. Bank FSB*, 410 F.Supp.2d 374, 378–80 (D.N.J.2006) (holding that chapter 13 plan operates only as a provisional determination of the parties rights and conversion to chapter 7 obviates the res judicata effect of the confirmed chapter 13 plan).

 Section 349(b) governs the effect of a dismissal. It states that dismissal: (1) reinstates any superseded proceeding or custodianship, any avoided transfer, and any voided lien; (2) vacates any order, judgment, or transfer ordered under specified sections of the Code; and (3) re-vests the property of the estate in the entity in which such property was vested immediately before bankruptcy was filed. The intent behind § 349(b) is to "undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." *In re Sanitate*, 415 B.R. 98, 105 (E.D.Pa.2009) (quoting S.Rep. No. 95–989, at 48–49 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835). Rather than restoring the parties to their respective positions held on the date of the petition, it would perhaps be more accurate to state that the intent behind § 349(b) is to undo the actions of the bankruptcy court to the extent possible. In keeping with this interpretation, when a debtor's chapter 13 case is dismissed prior to discharge, the court's acceptance of the debtor's bankruptcy plan must be negated and the parties are no longer bound by its terms.

 In essence then, the confirmation order should be rendered of no further legal effect following a dismissal. But in the vast majority of reinstated chapter 13 cases, nothing of any significance has oc-

curred between the dismissal and the reinstatement. As such, courts once again have fashioned a practical solution, which is to merely assume that the parties continue to be bound by the previously confirmed plan. *E.g., Geberegeorgis v. Gammarino (In re Geberegeorgis)*, 310 B.R. 61, 70 (6th Cir. BAP 2004); *Diviney v. Nationsbank of Tex., N.A. (In re Diviney)*, 225 B.R. 762, 770–71 (10th Cir. BAP 1998); *Aubain v. LaSalle Nat'l Bank (In re Aubain)*, 296 B.R. 624, 633 (Bankr.E.D.N.Y. 2003). In most cases, no one raises the issue, the debtor and trustee continue to perform, and on completion the court enters the discharge order. If courts held the starchy opinion that the debtors in these cases had to file a new plan, it would negate the primary benefit of reinstatement—avoiding beginning a new five-year plan and incurring the legal expenses associated with the confirmation process. Thus, when no one's rights have changed during the gap between dismissal and reinstatement, there is no good purpose to be served in requiring the debtor to go through the confirmation process again.

In cases such as this one, where the rights of the parties have substantially changed during the gap, this practical solution cannot be utilized. The Court is forced to adopt the starchy position that deems the prior confirmation order to be no further legal effect. To hold otherwise, would be akin to applying the automatic stay retroactively.

### C. Reinstatement and the Court's § 105 Powers

 Finally, the Debtor has argued that the Court can and should void the sheriff's sale for equitable reasons, using its § 105 powers. Section 105 provides that the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provi-

sions of this title." As broadly worded as this statute appears to be, this Court has always held the view that the powers granted by it should be applied very sparingly. However, the Court acknowledges that there are a handful of reported decisions in which courts have utilized § 105 to reverse collection activity occurring in the gap between dismissal and reinstatement of a case. Without commenting on the propriety of these rulings, the Court notes that these courts relied on § 105 because they found the debtor had been denied due process, either in the bankruptcy proceedings that led to dismissal of the case or in the collection proceeding that occurred during the gap period, and there was evidence of bad faith on the part of the foreclosing creditor. *See, e.g., Krueger v. Great Pac. Money Mkts., Inc. (In re Krueger)*, 69 B.R. 845, 849 (Bankr.C.D.Cal. 1987), *aff'd on other grounds*, 88 B.R. 238 (9th Cir. BAP 1988); *Johnson v. IRS (In re Johnson)*, 210 B.R. 134, 138–40 (Bankr. W.D.Tenn.1997); *In re Acosta*, 181 B.R. 477, 478–79 (Bankr.D.Ariz.1995).

In the present case, the Debtor contends that she was denied due process, not in the judicial foreclosure process, but by the sheriff who later conducted the sale. She contends that, under Colorado law, the Creditor should have directed the sheriff to reschedule and re-notice the sale, rather than simply conducting the sale immediately following dismissal of her bankruptcy case. Assuming without deciding that the Court has jurisdiction to decide this issue and to employ § 105 in doing so, it nevertheless finds no basis for voiding the sheriff's sale based on a lack of notice. A review of the relevant state statutes reveals that the sheriff's sale was conducted in accordance with Colorado law.

Section 38–38–109(2) of the Colorado Revised Statutes sets forth the effect of bankruptcy proceedings on both public

trustee foreclosures and judicial foreclosures, such as the sheriff's sale in this case. It contains two subsections, (a)—which applies when publication of the required notice was completed prior to the bankruptcy filing, and (b)—which applies when publication of the required notice was not completed prior to the bankruptcy filing.

In relevant part, Colo.Rev.Stat. § 38-38-109(2)[3] provides:

(a) If all publications of the combined notice prescribed by section 38-38-103(5) or 13-56-201(1), C.R.S., have been completed before a bankruptcy petition has been filed that automatically stays the officer from conducting the sale, the officer shall announce, post, or provide notice of that fact on the then-scheduled date of sale, take no action at the then-scheduled sale, and allow the sale to be *automatically continued* from week to week in accordance with paragraph (a) of subsection (1) of this section unless otherwise requested in writing prior to any such date of sale by the holder of the evidence of debt or the attorney for the holder.

(b)(I) If the publications of the combined notice prescribed by section 38-38-103(5) or 13-56-201(1), C.R.S., have not been started or if all the publications have not been completed before a bankruptcy petition has been filed that automatically stays the officer from conducting the sale, the officer shall immediately cancel any remaining publications of the combined notice and, on the date set for the sale, announce, post, or provide a notice that the sale has been enjoined or has been stayed by the automatic stay provisions of the federal bankruptcy code of 1978, title 11 of the

United States Code, as amended. *The sale shall not be continued* under paragraph (a) of subsection (1) of this section.

. . .

(III) When the property is to be sold by the sheriff under any statutory or judicial foreclosure or upon execution and levy made pursuant to any court order or decree, upon the termination of any injunction or upon the entry of a bankruptcy court order dismissing the bankruptcy case, abandoning the property being foreclosed, closing the bankruptcy case, or granting relief from the automatic stay provisions of the federal bankruptcy code of 1978, title 11 of the United States Code, as amended, the sheriff shall forthwith establish a new date of sale and republish a new combined notice pursuant to section 13-56-201(1), C.R.S.

Colo.Rev.Stat. § 38-38-109(2)(a)-(b)(III) (2011) (emphasis added). In summary, these provisions provide that when the publication of the required notice is complete prior to a bankruptcy filing, the sale simply continues from week to week automatically and can be held as soon as the automatic stay no longer applies to the property for whatever reason. If, however, publication is not complete when a bankruptcy case is filed, then the sale date is not continued. Instead, a new sale date must be set and a new notice must be published once the stay no longer applies. Thus, the requirement of a new sale date and republication *only* applies if publication is not complete when the bankruptcy filing intervened.

In order to determine whether Colo.Rev. Stat. § 38-38-109(2)(b)(III) applies in this

---

**3.** The language, but not the substance, of Colo.Rev.Stat. § 38-38-109(2) was amended effective September 1, 2012. The quoted language is the version of the statute that was in effect when the sale was conducted.

case, the Court directed the parties to file supplemental affidavits addressing whether publication of notice of the sheriff's sale was completed prior to the Debtor's bankruptcy filing. Attached as exhibit A to the Creditor's Supplemental Affidavit is proof of publication in the Boulder Daily Camera newspaper. It demonstrates that publication of the required notice of the sheriff's sale was completed on January 29, 2011, more than three weeks before the filing of this case on February 22, 2011. The Debtor did not provide the Court with any evidence to the contrary. Accordingly, Colo.Rev.Stat. § 38–38–102(2)(b)(III) is inapplicable. Instead Colo.Rev.Stat. § 38–38–102(a) applies and the Creditor was free to direct the sheriff to conduct the sale as soon as possible following dismissal. Since the sale was properly conducted pursuant to state law, equity does not require it be set aside here.

## III. CONCLUSION

 For the foregoing reasons, it is ORDERED that (1) the Debtor's request to set aside the Sheriff's Sale in Boulder County is DENIED; (2) the Creditor's Motion for Relief from Automatic Stay to allow it to Proceed with eviction is GRANTED; and (3) the prior Order of Confirmation is VACATED.[4]

It is FURTHER ORDERED that the Debtor shall file either an Amended Plan or a Notice of Dismissal or Conversion, depending on whether the Debtor wishes to continue with this chapter 13 proceeding

despite the loss of her home, **no later than three weeks from the date of this Order.**

---

4. The Court acknowledges that the Debtor has also requested in her briefs that the Court impose sanctions against the Creditor for alleged violations of the automatic stay, namely issuance of the deed and posting of an eviction notice after the case was reinstated. The Court makes no ruling on this request at this time because it is not properly before the Court. Due process requires that the Debtor file either an adversary proceeding or a separate motion in the main case requesting this relief pursuant to Fed. R. Bankr.P. 9020, followed by the Court's issuance of an order to show cause. A request in a brief on another motion is insufficient. Further, the Court notes that, pursuant to Colo.Rev.Stat. § 38–38–501(1), the issuance of a sheriff's deed is a purely ministerial function that occurs automatically and, thus, does not violate the automatic stay. *In re Gagliardi*, 290 B.R. 808, 815–16 (Bankr.D.Colo.2003).